**CHADICK v. UNITED STATES.**
No. 7689.

Circuit Court of Appeals, Fifth Circuit.
May 31, 1935.

Rehearing Denied July 8, 1935.

B. D. Tarlton, of Corpus Christi, Tex., and E. A. McDaniel, of McAllen, Tex., for appellant.

W. R. Smith, Jr., U. S. Atty., and H. W. Moursund and Ben F. Foster, Asst. U. S. Attys., all of San Antonio, Tex., and J. Louis Monarch, Sp. Asst. to Atty. Gen., for the United States.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

Appellant Chadick was convicted upon an indictment which charged him with attempting to evade, in violation of 26 USCA § 2146 (b), part of the income tax imposed by law upon the net income which he received in the year 1929. He reported a net income for that year of approximately $10,000 which he paid. The government, upon the basis of an examination which it caused to be made of his deposits in several banks, contends that he owed it an additional tax of over $10,000; but as many items of deposit may not have represented income, we adopt Chadick's contention that the only items in dispute are four which appear on deposit slips purporting to show deposits of $4,000 on January 9, 1929, of $3,696.05 on January 28, of $4,000 and $1,606 on February 25, in the Edinburg State Bank & Trust Company. Each of these deposit slips was authenticated by the signature of the president or cashier of the bank, except that no such signature appears on the second deposit of $4,000, but it was identified by the handwriting upon it. We eliminate from further consideration the purported deposit of $1,606, because Chadick stated to an income tax agent that it represented a county warrant which he bought at par on which he made no profit. This leaves for consideration in determining whether additional income taxes were due as alleged only the two $4,000 items and the one for $3,696.05, which admittedly Chadick did not account for in his income tax return, and which he does not claim to have omitted by mistake. If, therefore, the government succeeded in proving that these three amounts, totaling $11,696.05, were received by Chadick, the jury were authorized to find that he intentionally and willfully attempted to evade the payment of a part of his income tax as charged in the indictment.

The government introduced in evidence the three original deposit slips above described, and three checks corresponding in dates and amounts, drawn on the Edinburg Bank, payable to cash, and signed, "W. L. Pearson by A. A. Sangster." Those checks were paid, canceled, and charged to Pearson's account by the bank. None of them bore any indorsement. It was proven that $3,696.05, the amount shown on one check and one deposit slip, was 1¼ per cent. of three county warrants or estimate checks, also admitted in evidence, drawn in November and December, 1928, on the treasurer of Hidalgo county, Tex., by the county clerk and countersigned by the county auditor, and payable to W. L. Pearson & Co. out of the road district fund for work done under contract upon the public roads. The government introduced in evidence also a number of similar checks drawn during the year 1928 by Pearson on the Edinburg Bank, payable to cash, and an equal number of deposit slips in favor of Chadick corresponding in dates and amounts with such checks; and several warrants issued by Hidalgo county payable to W. L. Pearson, and thereby made it appear that these deposit slips corresponded exactly with checks drawn by Pearson, payable to cash, and were uniformly 1¼ per cent. of the various county warrants or so-called estimate checks. Prior to and during the years 1928 and 1929, W. L. Pearson & Co. received approximately $10,000,000 upon road and other public contracts which it had with Hidalgo county. It is the theory of the government that W. L. Pearson & Co., in order to obtain contracts for public works and to get its estimates approved, paid bribe money, usually referred to by the witnesses as "commissions," to a number of county officials, including the sheriff, county auditor, and all the members of the board of county commissioners. W. L. Pearson, president and principal stockholder of the company, testified that from time to time he drew out of the company's, and placed in his own individual, account the amounts, aggregating between $600,000 and $700,000, which were to go to the bribe takers, and then either personally or through his agent, A. A. Sangster, drew his personal checks payable to cash according to lists furnished by A. Y. Baker, who combined in himself the positions of sheriff,

political boss, and president of the Edinburg Bank, and delivered those checks to Baker for distribution to himself and his fellow grafters. Chadick was a member of the board of county commissioners and kept an account at the Edinburg Bank. His individual ledger sheets were missing, as were those of Baker and several other county officials, but the original deposit slips made out in his favor were found among the bank's records, and duplicate deposit slips were sent to him regularly along with his canceled checks. Two bank clerks testified that Baker occasionally withdrew money from Chadick's account, evidencing such withdrawals by debit tickets which were placed among Chadick's canceled checks. One of these clerks finally went so far as to say that Baker drew out of Chadick's account as much as he put into it. Chadick did not take the stand, but according to the testimony of Pollock, an internal revenue agent who interviewed him concerning his income tax returns, he made no such claim as that Baker had withdrawn any money from his bank account; but on the contrary admitted receiving the benefit of money which Baker had deposited for him, and said he could not explain deposits to his credit in the Edinburg Bank of some $70,000 in 1928 and some $11,000 in 1929, unless those deposits represented money received from Baker. Pollock further testified that Chadick, although he denied receiving money from Pearson, admitted that he knew the money Baker deposited to his credit in the Edinburg Bank had some connection with the Pearson contracts. Tinkler, county auditor, testified for the prosecution that during 1928 and 1929 he received money on the Pearson contracts through Baker, the commissions being evidenced by deposit slips in the Edinburg Bank after Baker had deposited the money there to his credit. Brooks, one of the county commissioners, testified that he received what he thought amounted to 1 per cent. of the estimates, but according to his statement he resigned in January, 1928, and was paid directly by Pearson. Hollingsworth, bookkeeper in the Edinburg Bank, and Gardner, the bank's cashier, both called as witnesses by the prosecution, were each asked on cross-examination whether in 1929 there were any irregularities in the management of the bank's affairs, or in the keeping of its records. The only criticism Hollingsworth had to offer was that the ledger sheet of the county road district was changed and rewritten, and Gardner criticized only the handling by Baker of the account of the road district in 1928. Neither of these witnesses testified as to any irregularity which could possibly affect any matter now under investigation. Baker and Sangster died before the trial.

Chadick contends that none of the documentary evidence, consisting of deposit slips, Pearson's checks, and county road warrants, was admissible in evidence. As to all the deposit slips he argues that they were not properly authenticated, did not come from the proper custody, and were not shown to have been authorized by him, and that the presumption of regularity which ordinarily attaches to bank records was overthrown by testimony disclosing irregularities. As to the Pearson checks he says that Pearson's testimony concerning them was hearsay. The county road warrants are objected to because they were all issued in 1928. In addition he contends that all the evidence, whether documentary or oral, relating to the year 1928 was inadmissible, because it had no tendency to show the amount of income received by him in 1929.

The deposit slips were genuine, as it appears they were made out in the regular course of business by bank officials. The evidence, while circumstantial, was sufficient to authorize the jury to conclude that they were made out by Baker with Chadick's authority, pursuant to a plan agreed upon for the distribution of money received from Pearson. The jury were not bound to accept the testimony of the bank clerk that Baker withdrew money deposited by him to Chadick's credit, but clearly it was within their province to reject that testimony and to accept instead Pollock's testimony, according to which Chadick admitted receiving money deposited by Baker to his credit, and never once suggested that Baker had appropriated any of it to his own use. Chadick, who should have known of any withdrawals by Baker when he received his bank statements, made no claim to the revenue agent that the full amount of the deposit of $11,696.05 in the Edinburg Bank, here directly involved, was not income to him. The deposit slips furnished prima facie evidence that the bank received the amounts appearing thereon, and they are in no way discredited by the circumstance that Chadick's individual ledger sheets were missing. It ought not to be assumed that the missing ledger sheets

of Chadick's account would fail to correspond with the deposit slips as to money deposited. The fact, if it were a fact, that the ledger sheet of the county road district was changed or rewritten cannot possibly be held, at least in the absence of proof of fraud, to impeach Chadick's bank account. Pearson's checks, payable to cash as they were, and unindorsed, would not, standing alone, have constituted proof of the payment of any sum to Chadick, but when identified with the deposit slips and the county warrants they help to prove the government's contention, not only that Baker received them for distribution, but also that the amounts thereof corresponded exactly with the amounts placed to his credit and with "the cent percent" of the estimates which it is claimed he received. There is nothing in the contention that Pearson's testimony was hearsay. He used the checks which Sangster signed in his name merely to refresh his memory as to the amounts which had been paid out of his personal account. The county road warrants issued in November and December of 1928 were admissible in evidence, because the aggregate amount thereof was used as a basis for calculating the amount of Pearson's check and the deposit slip for $3,696.05 placed in January, 1929, to Chadick's credit in the Edinburg Bank. We are therefore of opinion that error cannot successfully be assigned on the admission of any documentary evidence relating to transactions entered into in 1929. The deposit slips, checks, and county warrants, relating to 1928, bore the same relation to each other and to Chadick's income as did those of 1929. We think they were admissible to corroborate Pearson's testimony as to the corrupt agreement, and to show also that Chadick's motive in not reporting his illegal gains was to keep as secret as possible the fact that he was receiving income which it was a criminal offense to accept. The testimony of Brooks and Tinkler that they accepted bribe money from Pearson and Baker, while it was corroborative of Pearson's testimony, in our

opinion should not have been allowed to go to the jury. The fact that they accepted bribe money was no evidence that Chadick did. But, in the light of all the facts and circumstances, we think the error was harmless. Evidence for the prosecution disclosed beyond any reasonable doubt that in 1929 Chadick received from Pearson through Baker $11,696.05, and that no part of that amount was subject to deduction, since all the credits to which he was entitled were deducted from his original income tax return; that Chadick admitted that he had received money from Baker, and had not reported any of it as income; and that when asked by the revenue agent for an explanation he did not claim to have omitted unintentionally any income from his report. Upon this undisputed evidence, and without giving any weight whatever to the testimony of Brooks and Tinkler, the conclusion is unavoidable that Chadick intentionally and willfully omitted from his income tax report for 1929 a part of his net income, as charged in the indictment. It is, of course, no defense that the part so omitted was income derived from unlawful transactions.

The judgment is affirmed.

HUTCHESON, Circuit Judge (specially concurring).

I concur in the view of the majority that the trial was without reversible error, and that the judgment should be affirmed.

I particularly concur in their view that if the testimony of Brooks and Tinkler that they accepted bribe money was subject to the objection urged against it, and should not have been allowed to go to the jury, the error in admitting it was harmless. But I disagree with their view that the admission of this testimony was error. I think it was relevant and admissible as tending to prove both the agreement for the distribution of graft money, and its carrying out as a circumstance in the chain connecting Chadick with income received and willfully not reported.