Jack B. COOPER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19691.

United States Court of Appeals
Fifth Circuit.

Aug. 8, 1963.

Rehearing Denied Sept. 12, 1963.

Vincent C. Giblin, Miami Beach, Fla.,
E. David Rosen, Miami, Fla., Marion E.
Sibley, Sibley, Grusmark, Giblin, King
& Levenson, Miami Beach, Fla., for appellant.

Daniel S. Pearson, Asst. U. S. Atty.,
Miami, Fla., Edith House, U. S. Atty.,
Southern Dist. of Florida, for appellee.

Before TUTTLE, Chief Judge, and
JONES and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Appellant was convicted in 1962 after
a non-jury trial in 1961 on a two count
indictment charging him with unlawfully
attempting to evade the payment of income taxes by the filing of false returns
for fiscal years ending in 1953 and 1954.[1]
The indictment was returned in 1959.

The case comes here after protracted
post trial proceedings seeking in the
alternative a judgment of acquittal, or
a new trial, or the vacation of the findings of fact, conclusions of law, and the
adjudication of guilt to allow the introduction of surrebuttal evidence.

The additional proof was to be offered
for the purpose of bolstering a contention that the funds on which appellant

1. § 145(b) of the Internal Revenue Code of 1939.

failed to pay taxes were embezzled, and thus to afford escape under the umbrella of Commissioner v. Wilcox, 1946, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752. The theory was that the funds were acquired before Wilcox was overruled in James v. United States, 1961, 366 U. S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246, and that James reserved a form of residual protection to those embezzling in the interim. The application of the teaching of Wilcox in the first instance to the facts of this case makes one of the issues on this appeal. We do not reach the validity of the residual protection theory of James. Another issue centers on the failure of the trial court to rule on the motion to dismiss or for entry of judgment of acquittal when the government rested its case. Under our view this involves the question of sufficiency of the evidence at that point in the case. Insufficiency of the whole of the evidence makes the other issue in the case.

The case in chief for the government showed that in 1952 the Dominican Republic made $1,504,000 available to appellant through a Chase Manhattan Bank letter of credit with which to purchase planes for its air force. He owned no planes, but acted either as a purchasing representative, or as a dealer who purchased and resold them at a profit to the Dominican Republic. Whether one of the other is immaterial to the result reached by the District Court or here. The total was to include planes at $45,000 each together with $2,000 each for freight.

Appellant contacted a Washington acquaintance in an effort to locate the planes. It was suggested that they could be obtained from the United States Government through the State and Defense Departments. Appellant advised them that he wished to purchase them from other sources because he had more leeway for a profit in following that course.

This acquaintance located thirty two planes in Sweden and they were purchased at a price of $30,500 each or a total of $976,000 with payments being made out of the letter of credit. An additional $64,000 was remitted to the Dominican Republic to cover freight charges. The balance of $464,000 was transmitted to the Miami Beach First National Bank in the tax year 1953, and deposited in a special account in the name of and under control of appellant. The sales invoices were from the Swedish seller to appellant at the lower price, and were delivered to him. He, in turn, invoiced them on his billhead to the Dominican air force at $45,000 each. The new invoices were substituted with the bank for the old invoices. The partial assignments and substitution was under the terms of the letter of credit, and the new invoices were forwarded to the Dominican Republic by the bank. Appellant reported only $46,000 of the $464,000 balance received by him as income on the tax return for the fiscal year ended in 1953. He listed it simply as income received as "purchasing agent".

Two additional transactions, falling in fiscal year 1954, and following the same pattern, involved the purchase of ten additional planes and spare parts for the Dominican Republic air force whereunder a total of $1,182,142.30 was entrusted to appellant through letters of credit with similar results. This time the excess over prices paid totalled $281,045.37. This was deposited in the account of Dominican Import & Export Company, an inactive corporation, at Miami Beach First National Bank. Appellant exercised exclusive control over this bank account. His tax return for the fiscal year ending in 1954 showed only income of $15,000 from this corporation.

The sums deposited in these bank accounts were claimed and used by appellant as his own. He used the funds to pay for, among other things, a personal residence, automobiles, furniture, and even disbursed some of it in the form of loans to friends and relatives.

He gave sworn financial statements to a surety company in connection with another matter as of January 12, 1953 in which he claimed the funds then in

the special account as his own with no liabilities outstanding. In the meantime, the next transaction had occurred with the resultant deposit in the corporate account under his control. He gave another financial statement and claimed those funds as his own with no liabilities outstanding.

The net income of appellant for each of the years involved was established on the net worth plus non-deductible expenditure accounting method, and there was abundant proof that the most likely source of the additional income established was the receipt directly, and indirectly through the corporation, of the unexpended amounts of these letters of credit. There was evidence that members of a group headed by General Rafael Trujillo, Jr., in the Dominican Republic owned part or all of these sums, but there was no writing to prove it and no member of the group testified.

Appellant represented to his Washington acquaintance who located the planes, and who was to receive one half of all profit, that his profit on the first transaction was $64,000, and paid him $32,000 under their arrangement. On the other hand there was evidence that his profit was $69,000 of which $23,000 went to his brother for services rendered leaving the amount of $46,000 which he returned for taxes. There was other evidence that appellant was to draw $25,000 per year salary from the corporation plus $2,000 per plane purchased.

This was the state of the evidence when the government rested. The case was tried on the apparent defense that the unexpended sums belonged to the so-called "Dominican group", with appellant having full authority to make personal use of the funds on a loan basis, and that they were so used. On the post trial motions the defense was amplified to assert the embezzlement basis; i. e., that appellant and the Dominican group embezzled the funds from the Dominican Republic under a graft or kick-back arrangement, and as such they were non-taxable under the Wilcox case holding.

The District Court made comprehensive findings of fact, all of which are supported by the evidence. In sum, the facts showed personal use of the funds, and a claim to the funds as reflected in the financial statements with the representation of no liabilities. There was no writing of any kind substantiating any sums due others out of the funds, although there was evidence of some payments. There was no mention on either of the tax returns in question of the funds other than the receipt of the $46,000 as "purchasing agent". Appellant kept no books on the transactions. The court, in the guilty finding, concluded that the receipt by appellant of sums greatly in excess of those declared on his income tax returns in the years in question were evidenced by the net worth calculations as well as by the tracing of the aircraft and aircraft parts sales transactions, and held that his true net income for 1953 was $263,600.52 and $207,381.45 for 1954.

Appellant moved for judgment of acquittal when the government rested its case on the ground that the evidence was insufficient to sustain a conviction. The court took the motion under advisement and ordered appellant to proceed. This is laid as error on the authority of Jackson v. United States, 5 Cir., 1958, 250 F.2d 897, a case involving a jury trial, where we pointed out that there was no provision for a court to reserve ruling on a motion for acquittal made at the close of the government's case, as distinguished from such a motion made at the close of all of the evidence, and held that the reservation of a ruling would force a defendant to election between resting and being deprived of the benefit of the motion. This followed from the principle that the introduction of evidence after the denial of the motion made at the close of the prosecution's case waives any error in the denial of the motion. See T'Kach v. United States, 5 Cir., 1957, 242 F.2d 937; and Harris v. United States, 5 Cir., 1961, 285 F.2d 85.

■ We affirm the principle enunciated in Jackson, but we must go further and determine whether the failure to rule constituted harmful error. There can be no error if the evidence was sufficient to sustain a conviction when the government rested. 28 U.S.C.A. § 2111. And for the purposes of our holding we assume, without deciding, that the objection to the failure to rule was adequate, and that there was no waiver otherwise. Cf. United States v. Goldstein, 2 Cir., 1948, 168 F.2d 666.

■ A careful review of the evidence up to the point of the motion makes it manifest that it was ample to sustain the conviction. It showed either that appellant acted as a dealer and earned the sums in question as profit, or that he received the sums as a purchasing representative or agent, and in either event claimed and used the funds as his own. Of course, there was contradicted evidence that the funds or at least undisclosed portions were due others under an arrangement whereby appellant could make use of them in his unlimited discretion in the nature of borrowing. Taking the view most favorable to the judgment of conviction, as is the law, Glasser v. United States, 1942, 315 U.S. 60, 61 S.Ct. 457, 86 L.Ed. 680; Strauss v. United States, 5 Cir., 1963, 311 F.2d 926; Teate v. United States, 5 Cir., 1961, 297 F.2d 120; and Grissette v. United States, 5 Cir., 1963, 313 F.2d 187, we conclude that the government's case was sufficient and that the error in reserving ruling on the motion of appellant was therefore harmless. This, in effect, gives appellant the full benefit of the motion.

Taking also the view of the evidence most favorable to the government, it is clear that the evidence adduced on the full trial was sufficient to warrant the conviction. In sum, there was direct and undisputed proof of the increase in net worth, the receipt of and claim to the funds from the air craft and air craft parts transactions, a disavowal of

any liabilities against these funds, their expenditure for the personal use of appellant, a failure to disclose the receipt in any manner for income tax purposes other than the $46,000 item and $15,000 in income from the corporation. There was also a failure to keep records. This made out a case of willfully and knowingly attempting to evade and defeat income taxes due by filing false and fraudulent tax returns. See Spies v. United States, 1942, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 on proof of intent.

■ The District Court did not err in rejecting the defense that no taxes were due because of the embezzled funds doctrine of Wilcox. There a bookkeeper embezzled money from his employer and it was held to be non-taxable. But prior to the transactions in question the Supreme Court decided Rutkin v. United States, 1952, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833, limited Wilcox to its facts, and held funds received by way of extortion subject to income taxes. The funds here are not analogous to extorted or embezzled funds in the sense of lack of title. The argument is that they were produced under a graft or kickback arrangement between appellant and persons in the government of the Dominican Republic. This theory is asserted notwithstanding a total lack of evidence on the trial, or by way of proffer on the motion to vacate and reopen the case, as to the specifics of the graft arrangement, or as to any agreement between and among the grafters regarding their division and ownership of the funds produced. It is also noteworthy that appellant, undisputedly, was legitimately engaged as a purchasing agent for, or as a dealer in airplanes and some portion, undisclosed, of the funds produced were his legitimate earnings or profit.

We hold that these funds were gains and profits as those terms are used in § 22(a) of the Internal Revenue Code of 1939. They were not of the Wilcox type,[2] and when received, the doctrine

---

2. Cf. Chadick v. United States, 5 Cir., 1935, 77 F.2d 961, where graft in the form of bribes to a public official for contracts was held to be taxable income.

of that case had been limited to embezzled funds. This was enough for the rejection of this defense by the trial court, and for denying the motion to vacate. Indeed, there was no evidence on the trial that appellant or his accountant even knew of Wilcox or James. There was no reliance then on the Wilcox doctrine. It came as an afterthought following conviction but neither the evidence adduced or proffered will support it.

Having adopted the view that Wilcox is not applicable, we do not reach the question of whether there is any protection under the statement in James that willfulness cannot be proven in a criminal prosecution for failure to include embezzled funds in gross income where the receipt of the funds occurred while Wilcox was still effective, or in the words of the Chief Justice: "so long as the statute contained the gloss placed upon it by Wilcox at the time the alleged crime was committed."

Sufficient evidence appearing in a record free from harmful error to warrant the conviction of appellant, the judgment appealed from should be and is affirmed.