UNITED STATES of America
v.
Mario PITOSCIA, Defendant.
Cr. No. 10–64.

United States District Court
D. New Jersey.

Jan. 26, 1965.

David M. Satz, Jr., U. S. Atty., by
Lee B. Laskin, Asst. U. S. Atty., for
the United States.

Frank M. Travaline, Jr., Camden,
N. Y., for defendant, Mario Pitoscia.

MADDEN, Chief Judge:

This matter is presently before the Court on the defendant's motion to dismiss the Indictment (Criminal No. 10–64) which charges the defendant in three separate counts with wilfully and knowingly attempting to evade the payment of certain income taxes for the respective years of 1957, 1958 and 1959 by the filing of false and fraudulent returns, in violation of Section 7201 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7201.

Subsequent to the filing of the Indictment, counsel for the defendant made demand for several bills of particulars. To each demand, counsel for the United States responded and provided the specific information requested. Thereafter this motion was made and the matter was argued orally before the Court. For the purpose of determining this motion, counsel for the defendant and for the United States have submitted an agreed statement or stipulation of facts.

Briefly the facts are, as follows:

During the years of 1957, 1958 and 1959, the defendant, Mario Pitoscia, was employed as store manager by Bearings, Inc. of Camden, New Jersey. As store manager, the defendant had access to the Company's stock and records, and authority to contract supplies, issue purchase orders and pick up merchandise from suppliers in the Philadelphia branch of Bearings, Inc.

From time to time during the years in question, the defendant, without the knowledge or consent of the Company, received the proceeds from various sales of bearings either owned by or charged to the Company for which he failed to account to the Company and which he appropriated to his own use and benefit. It appears that over the period of time involved the defendant sold to a third party approximately 1000 bearings which he appropriated from Company stock and procured from suppliers who charged the Company therefor. By pre-

paring false entries and falsifying the Company's inventory books, the defendant was able to cover the shortages and conceal his unlawful activities from which he received a total of approximately $32,000.00.

For each year in question, the defendant failed to report as income on his income tax returns the sums or proceeds which he had appropriated to his own use, and it is for his failure to include said sums or proceeds on his income tax returns for 1957, 1958 and 1959 that the defendant is charged with wilfully and knowingly attempting to evade and defeat a portion of his income tax for each of the years alleged in the indictment. The defendant is not charged with the receipt of any other unreported taxable income in his returns of 1957, 1958 and 1959.

The defendant's position on this motion is quite clear. The defendant contends that under the stipulated facts, the proceeds or funds in question which he has failed to include as gross income in his income tax returns for 1957, 1958 and 1959 constitute embezzled funds under the doctrine of C. I. R. v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946), and that under the decision of James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) the Government cannot prosecute the defendant for "wilfully" attempting to evade income taxes by his failure to include said funds as gross income in his income tax returns for the years alleged in the indictment.

In opposition to the defendant's motion, the United States contends that the Wilcox and James cases, supra, are not applicable and that the unreported funds involved do not constitute embezzled funds.

In the Wilcox case, supra, the Supreme Court held that embezzled funds do not constitute taxable income to the embezzler in the year of the embezzlement under Section 22 of the Internal Revenue Code of 1939 for the reason that a taxable gain is conditioned upon (1) the presence of a claim of right to the alleged gain and (2) the absence of a definite, unconditional obligation to repay or return that which would otherwise constitute a gain. Embezzled funds, according to the Wilcox doctrine, do not meet the conditions established by definition in determining taxable gains. In the later case of Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952), the Supreme Court not only held that extorted funds constitute taxable income to the extorter in the year of the extortion under Section 22 and that the Wilcox case is limited to its own facts, but it implicitly rejected the Wilcox rationale by concluding that lawful gains as well as unlawful gains constitute taxable income when its recipient has such control over it that as a practical matter he derives readily economic value from it.

More recently, the Supreme Court was confronted with the opportunity to consider and evaluate the decisions rendered in the Wilcox and Rutkin cases. In James v. United States, 273 F.2d 5 (C.A. 7th Cir., 1959), the Court of Appeals for the Seventh Circuit had before it a factual situation on "all fours" with that of the Wilcox case.[1] In affirming the judgment of the District Court on the conviction of the defendant James, the Court of Appeals rejected the application of the Wilcox doctrine and relied upon the Rutkin case in support of its decision. Thereafter, the Supreme Court granted certiorari

1. The defendant James was a union official who embezzled some $700,000.00 during the years 1951 through 1954 from his employer union and from an insurance company with which the union was doing business. James had failed to report the aforesaid funds in his income for the years involved and was convicted for wilfully attempting to evade the payment of his income taxes for each of the years 1951 through 1954, in violation of Section 145(b) of the Internal Revenue Code of 1939 and Section 7201 of the Internal Revenue Code of 1954. He was sentenced upon his conviction to a term of three years imprisonment by the District Court for the Northern District of Illinois, Eastern Division.

in order to resolve the conflict of the decision of the Court of Appeals with its decision in the Wilcox case.[2] In its opinion, James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246, the Supreme Court recognized that the Rutkin case had effectively vitiated the Wilcox rationale and acknowledged the irreconcilability of the Wilcox case with the Rutkin case. The Supreme Court then proceeded to specifically overrule the Wilcox case and stated that the Wilcox case was wrongly decided.

However, while the Supreme Court "cut away the remaining vestiges of the Wilcox rationale" in the James decision and held that embezzled funds do constitute taxable gains, it reversed the criminal conviction for "wilfully" failing to report embezzled funds as income on the grounds that the defendant had a right to rely on the Wilcox case in not reporting the income for the years involved. The majority opinion, 366 U. S. 213, at pages 221 and 222, 81 S.Ct. 1052, at pages 1056 and 1057, reads as follows:

> "But, we are dealing here with a felony conviction under statutes which apply to any person who 'wilfully' fails to account for his tax or who 'wilfully' attempts to evade his obligation. In Spies v. United States, 317 U.S. 492, 499 [63 S.Ct. 364, 368, 87 L.Ed. 418], the Court said that § 145(b) of the 1939 Code embodied 'the gravest of offenses against the revenues,' and stated that willfulness must therefore include an evil motive and want of justification in view of all the circumstances. Id. [317 U.S. at page 498, 63 S.Ct. at page 367]. Willfulness 'involves a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income.' Holland v. United States, 348 U.S. 121, 139 [75 S.Ct. 127, 137, 99 L.Ed. 150].

> "We believe that the element of willfulness could not be proven in a criminal prosecution for failing to include embezzled funds in gross income in the year of misappropriation so long as the statute contained the gloss placed upon it by Wilcox at the time the alleged crime was committed. Therefore, we feel that petitioner's conviction may not stand and that the indictment against him must be dismissed."

Thus, the James case appears to reserve a "form of a residual protection to those embezzling in the interim" between the time the Wilcox case was decided and the date of the James decision, and provides them with the now tattered "umbrella" afforded by the Wilcox decision. Cooper v. United States, 321 F.2d 274 (C.A. 5th Cir., 1963), cer. den. 375 U.S. 964, 84 S.Ct. 482, 11 L. Ed.2d 414, reh. den. 376 U.S. 929, 84 S.Ct. 657, 11 L.Ed.2d 627; In Re Parr, 205 F.Supp. 492 (D.C., S.D. Texas, 1962), aff. 265 F.2d 894, rev. 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277; Armstrong v. United States, 327 F.2d 189 (C.A. 9th Cir., 1964); Beck v. United States, 298 F.2d 622 (C.A. 9th Cir., 1962); Riddell v. Monolith Portland Cement Co., 301 F.2d 488 (C.A. 9th Cir., 1962). Consequently, the Court feels that if the defendant's activities in the instant case constitute embezzlement and the approximate sums totaling $32,000 which were unreported in the defendant's income tax returns for 1957, 1958 and 1959 constitute embezzled funds, then the authority of the James case is controlling and the indictment should be dismissed.

In cases decided subsequent to the Wilcox decision, wherein defendants have attempted to place themselves within the ambit of the Wilcox doctrine, federal courts have relied on factual distinctions to avert the application of the questionable Wilcox decision. As

2. James v. United States, 362 U.S. 974, 80 S.Ct. 1059, 4 L.Ed.2d 1009.

stated in the James case, 366 U.S. 213, at page 217, 81 S.Ct. 1052, at page 1054:

"Although this case appears to be the first to arise that is 'on all fours' with Wilcox, the lower federal courts, in deference to the undisturbed Wilcox holding, have earnestly endeavored to find distinguishing facts in the cases before them which would enable them to include sundry unlawful gains within 'gross income.'"

And, subsequently, on pages 220 and 221, 81 S.Ct. on page 1056, is the Court's possible explanation of why Congress did not act to change the rule which was established in the Wilcox case:

"There may have been any number of reasons why Congress acted as it did. Helvering v. Hallock, supra [309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604]. One of the reasons could well be our subsequent decision in Rutkin which has been thought by many to have repudiated Wilcox. Particularly might this be true in light of the decisions of the Courts of Appeals which have been riding a narrow rail between the two cases and further distinguishing them to the disparagement of Wilcox. * * *

"We believe that Wilcox was wrongly decided and we find nothing in congressional history since then to persuade us that Congress intended to legislate the rule. Thus, we believe that we should now correct the error and the confusion resulting from it *certainly if we do so in a manner that will not prejudice those who might have relied on it.* Cf. Helvering v. Hallock, supra [309 U.S. at page 119, 60 S.Ct. at page 451]. We should not continue to confound confusion, particularly when the result would be to perpetuate the injustice of relieving embezzlers of the duty of paying income taxes on the money they enrich themselves with through theft while honest people pay their taxes on every conceivable type of income." (Emphasis supplied.)

It must be recognized that in determining the nature of the activities of the defendant in the instant matter and whether the funds in question constitute embezzled funds and not taxable income under the Wilcox doctrine, the Court is confronted with these distinctions that were developed and asserted in the interim between the Wilcox and the James decisions. Moreover, while the factual distinctions which were drawn by federal courts in deference to the Wilcox decision now appear tenuous and to have minimal significance in light of the James case, this Court must determine whether the factual situation in the instant case is distinguishable in its critical aspects from that in the now overruled Wilcox case. In doing so, however, it seems no longer necessary to endeavor to reconcile the Wilcox case with the Rutkin and subsequent cases that adopted the Rutkin case rationale or to distinguish the instant matter in deference to and in disparagement of the Wilcox case.

How then do the facts of the instant matter compare with the facts in the Wilcox case? The defendant here, as in the Wilcox matter, was an employee in a relationship of some degree of trust and confidence. The defendant had access not only to Company stock but also to the means whereby he could obtain additional merchandise or stock in the supplier's warehouses. As store manager the defendant had access to Company books and records and was in a position to accomplish his tainted activities with little difficulty. In the Wilcox case the taxpayer was a bookkeeper in a transfer warehouse and by failing to credit his employer's customers with the cash paid to him he obtained the funds there in question. Here, the defendant was a store manager and by converting his employer's stock and selling it to a third party he obtained the funds in question. In the normal course of events, the defendant, as the taxpayer in the Wilcox matter, would

not have received the funds except for his conversion and misappropriations. Each took money from his employer knowing he had no right to it and each was able to do so because of his position of employment and trust. See Adame's Estate v. C. I. R., 320 F.2d 811 (C.A. 5th Cir., 1963). And while the intermediate acts of appropriation in each instance may differ, the funds were taken from an employer to whom they rightfully belonged *without the presence of a claim of right and without a definite, unconditional obligation to repay or return the same except that imposed by law.*

The fact that the defendant in the case at bar took goods belonging to his employer, sold them to a third party, and subsequently appropriated the proceeds to his own use does not necessarily constitute an act different in nature from that committed in the Wilcox case or the James case where money or cash was taken in the first instance. As was stated by Judge Kalodner in his dissenting opinion in Kann v. C. I. R., 210 F.2d 247, at page 255 (C.A. 3rd Cir., 1953):

> "The government's contention that despite the fact that the Kanns 'surreptitiously procured for their own use funds from family owned corporations' the funds so taken were not embezzled is, to say the least, ingenious. 'Surreptitiously procured' *is undoubtedly more euphonious and less grating on the embezzler's ear;* but embezzlement, called by any other name, is still embezzlement."

While the Court does not subscribe to the use of State law in determining taxability except where Congress has expressly or implicitly made the operation of the taxing statutes so dependent, it must recognize the reliance placed upon State law in both the Wilcox and James cases in determining whether the funds therein involved constituted embezzled funds. Nor can the Court ignore the plain and unmistakable meaning of the word "embezzlement" and the essential elements of the crime. According to Black's Law Dictionary (Fourteenth Edition) Embezzlement is "the fraudulent appropriation to his own use or benefit of *property or money* intrusted to him by another, or by a clerk, agent, trustee, public officer, or other person acting in a fiduciary character." (Emphasis supplied.) Under N.J.S.A. 2A:102–5, Embezzlement by employees, agents, consignee, factor, bailee, lodger or tenant is proscribed as follows:

> "Any employee, agent, consignee, factor, bailee, lodger or tenant who embezzles or, with intent to defraud, takes money or receives, retains or appropriates to his own use or the use of another, *any property or the proceeds of the sale of the same,* or any part thereof, belonging to his employer, principal, consignor, bailor or landlord, is guilty of a misdemeanor." (Emphasis supplied.)

In the case of State v. Bobbins, 35 N.J. Super. 494, at pages 497 and 498, 114 A.2d 474, at page 476 (A.D., 1955) embezzlement is described more fully, thus:

> "Moreover the connotation of the word 'embezzles' is obvious. It has had a settled significance in the law from the time of the first judicial declaration that conversion or misappropriation of money or property of an employer or principal by a servant or agent which had been entrusted to him by another, did not constitute common-law larceny. Since then embezzlement has meant generally the intentional and fraudulent appropriation of the *property or money* of another by a person into whose hands it had lawfully come or to whom it had been entrusted. (Citing cases and authorities.) The definition was so well known that in 1529 the first statute known to deal with such breach of trust made it a felony for any servant to 'embesill' his master's caskets, jewels, money, goods, or chattels or any part thereof, above the value

of forty shillings. 21 Henry VIII, ch. 7; 3 Coke's Institutes, p. 105.

"It has been said that the single word 'embezzle' in an indictment contains within itself the charge that the defendant fraudulently appropriated the *money or property* to his own use. (Citing cases and authorities.)" (Emphasis supplied.)

Whether it is the misappropriation of money or property in the first instance is of no moment. The plain meaning of the word "embezzlement" encompasses both situations.

In the case at bar the fact that the defendant was in a position to conceal his activities by various devices such as preparing false entries and falsifying inventory books, and in fact did so, is not significant except that it is quite common for embezzlers to attempt to conceal their crimes by employing such devices. Factually this is not an instance where the taxpayer by the use of such devices engaged in his activity for the express purpose of evading the payment of income taxes as in Federbush v. C. I. R., 325 F.2d 1 (C.A. 2nd Cir., 1963) or Kann v. C. I. R., supra, for here the defendant was not misappropriating funds from himself, his business or his corporation of which he was a stockholder. The defendant took the funds from his employer and he had not the least scintilla of right to the funds, and was covering his trail from his employer's eyes.

The fact that the defendant was never convicted or even prosecuted as an embezzler, as in the Wilcox or James case, is not determinate of the applicability of the two cases. The existence of either a conviction or prosecution for the crime of embezzlement was not established as an element of the Wilcox doctrine. As it was expressed in the Wilcox case, 327 U.S. 404, at page 408, 66 S.Ct. 546, at page 549, supra:

"Moral turpitude is not a touchstone of taxability. The question, rather, is whether the taxpayer in fact received a statutory gain, profit or benefit. That the taxpayer's motive may have been reprehensible or the mode of receipt illegal has no bearing upon the application of Section 22(a)."

See Footnote 3 in Adame's Estate v. C. I. R., 320 F.2d 811, 813, supra and Judge Kalodner's dissenting opinion in Kann v. C. I. R., 210 F.2d 247, 252, supra. And while the Court does not determine that the defendant is guilty of embezzlement under the laws of the State, it does recognize the general proposition that neither prosecution nor conviction are necessary elements of the crime of embezzlement. A crime is complete when the activities constituting the criminal act are terminated. Although the funds in question were appropriated by the defendant in the manner accomplished, they are no less embezzled funds for that reason or for the want of prosecution or conviction of the defendant for the crime of embezzlement.

It is the opinion of the Court that the activities of the defendant in the the instant case constituted embezzlement and the funds in question, embezzled funds, and that the James case is controlling.

Thereupon, having concluded that the unreported funds which the defendant failed to include as taxable income in his income tax returns for the years of 1957, 1958 and 1959 constituted embezzled funds and that under the authority of the James decision the defendant cannot be prosecuted for "wilfull" evasion of his income tax for his failure to include embezzled funds on said tax returns for those years, the motion of the defendant to dismiss the indictment is granted.

Accordingly, counsel will prepare an appropriate order in conformity with this opinion.