**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lawrence Lee GUINN, Jr., et al.,**
**Defendants-Appellants.**

**No. 71–1398**
**Summary Calendar.** *

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1972.

Rehearing and Rehearing En Banc
Denied March 8, 1972.

* ▮ Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

William F. Walsh, Houston, Tex., Charles W. Tessmer, Dallas, Tex., James A. Moore, Houston, Tex., for defendants-appellants.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Edward B. McDonough, Jr., Joe Doucette, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge.

This case involves the use in interstate commerce of a trailer as a gambling house.

On April 20, 1964, defendant-appellant Billy Ray Grimes, accompanied by defendant-appellant, Jere Bedford Jordan, ordered a specially constructed mobile home from a manufacturer in Roanoke, Texas. The mobile home contained two bedrooms, a kitchen modified into a bar, and a large room that could be expanded from common highway dimensions to a width of 24 feet and a length of 54 feet. Grimes told the manufacturer that the mobile home was to be used for business entertainment. For the next three years the business entertainment turned out to be gambling. About May 26, 1964,

Grimes and Jordan had the trailer set up by Grapevine Lake near Fort Worth, Texas. A witness at the trial testified that he "could hear people making bets" while employed as a bartender in the mobile home at Grapevine Lake. Early in 1965, Cullen James Rowan moved the trailer to Fort Worth at the request of Grimes, and, during July 1965, Rowan, assisted by a Mr. Chapman, moved the trailer to Forney, Texas. A witness who worked for Grimes while the trailer was in Forney and folded it for its next journey testified that he saw Jordan at the trailer and that he may have seen defendant-appellant, Lawrence Lee Guinn. There was no evidence of gambling in the trailer at Forney. In June 1966, Rowan and William A Chapman, the brother of the earlier Chapman, moved the trailer to a site near Checotah, Oklahoma. Grimes, Jordan, and defendant-appellant, Mrs. Jessie Jewell Jordan were convicted of gambling offenses in Oklahoma state court while they were in Checotah. There was no evidence that Guinn was in Oklahoma.

About January 12, 1967, Rowan and Chapman, at the request of Grimes, moved the trailer to Rowan's mobile home lot in Fort Worth, Texas. There was contradictory testimony as to whether the stop in Fort Worth was caused by engine trouble in the tractor which was pulling the mobile home or was for the purpose of selling the mobile home,[1] but about February 9, 1967, Rowan and Chapman moved the trailer to a site on the Brazos River near Sealy, Texas. Grimes, Jordan, and Mrs. Jordan were in Houston before the arrival of the trailer, and Guinn, a native of Houston, had leased the land where the trailer was to be set up, ostensibly for a hunting and fishing club.

During March, April, and May, Guinn directed the gambling in the mobile home. On May 5, 1967, Texas Rangers,

[1.] There was also contradictory testimony as to whether the trip from Oklahoma to Sealy, Texas, was paid for in one lump sum or in two separate installments

covering the trips from Oklahoma to Fort Worth and from Fort Worth to Sealy.

acting under a search warrant, searched the trailer. A state court convicted Guinn of gambling offenses. The evidence gained as a result of the search was turned over to federal officials. On December 6, 1967, F.B.I. agents, under a search warrant, found that the serial number of the trailer had been changed.

Grimes, Guinn, Jordan, and Mrs. Jordan were indicted on July 2, 1968, for traveling in interstate commerce with intent to carry on a gambling enterprise in violation of 18 U.S.C. § 1952 [2] and for conspiracy to violate that statute in violation of 18 U.S.C. § 371.[3] A jury found all four defendants guilty on the substantive and conspiracy counts, except Mrs. Jordan who was granted a directed verdict of acquittal on the substantive offense. The trial judge denied a motion for a new trial.

## I. *Sufficiency of the Evidence*

■ The appellants contend, first, that the evidence was insufficient as a matter of law to show that the intent of the interstate travel was to promote a gambling enterprise. An essential element of the offense defined by 18 U.S.C. § 1952, and derivatively 18 U.S.C. § 371, is travel in interstate commerce "with intent to" promote a gambling enterprise. The appellants contend that the interstate travel was from Checotah, Oklahoma to Fort Worth, Texas, where the interstate journey ended. This portion of the Oklahoma to Sealy, Texas, trip, they contend, was made without the requisite intent. The Fort Worth to Sealy portion of the trip, they argue, was a separate journey, and, even if made with the requisite intent, did not violate the statute because of the absence of interstate travel.

The evidence on this point was contradictory, but taking the view of the evidence most favorable to the government, Glasser v. United States, 1944, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, as we must, there was substantial evidence from which the jury might conclude that this element of the crime was established beyond a reasonable doubt. There was evidence that the move was intended to be from Oklahoma to Sealy, that the stop in Fort Worth was to correct engine trouble, and that the journey from Oklahoma to Sealy was paid for as one unit. The appellants were forced to leave Oklahoma because of discovery of their gambling activities, and they were in the Houston area shortly afterwards preparing to establish operations in Sealy.

The appellants place too much emphasis on the physical movement of the trailer and the fact that the trailer was in Fort Worth for more than three weeks. The gravamen of the offense is not the movement of the trailer in interstate commerce with the requisite intent but rather the travel of the defendants. Admittedly, the movement of the trailer

2. (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to

\* \* \* \* \*

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.
18 U.S.C. § 1952.

3. If two or more persons conspire either to ·commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
18 U.S.C. § 371. See also 18 U.S.C. § 2.

was, as the indictment alleged, part of the scheme, and the jury was instructed on this alleged aspect of the offense. There was substantial evidence that the defendants traveled in interstate commerce with the requisite intent. This element of the crime could be established on the basis of the movement of the trailer from Oklahoma to Sealy or on the basis of the defendants' travel independent of the trailer.

The appellants also contend that the evidence was insufficient to establish venue in the Southern District of Texas. As to the conspiracy count, an overt act in the Southern District of Texas must be proved to establish venue; as to the substantive count, travel in the Southern District of Texas with the requisite intent must be shown. There was ample evidence to support venue. See 18 U.S.C. § 3237.

Finally, the appellants argue that the trial judge erred in failing to rule on their motion for judgment of acquittal because of insufficient evidence at the close of the Government's case. See Jackson v. United States, 5 Cir. 1958, 250 F.2d 897; Montoya v. United States, 5 Cir. 1968, 402 F.2d 847. Their reliance on the deferred-ruling doctrine is misplaced. The doctrine means only that a defendant is entitled to a judgment of acquittal if the evidence at the close of the Government's case is insufficient, and that the trial judge may not, be deferring decision on the defendant's motion, allow sufficient evidence to be supplied by the defense or by the prosecution on rebuttal. If the evidence is sufficient when the prosecution rests, as it is in the instant case, any error in failing to rule promptly on the motion is harmless. See Cooper v. United States, 5 Cir. 1963, 321 F.2d 274, 277.

## II.  Search Warrant Validity

The appellants object to the introduction of evidence seized in the search by Texas Rangers on May 5, 1967 and in the search by F.B.I. agents on December 6, 1967. Both searches were made on the authority of search warrants, and the appellants direct their attack at the validity of the warrants.

The search warrants issued to Texas Rangers was based on an affidavit executed by a sergeant in the Texas Rangers.[4] The appellants contend that

4. "I, J. L. Rundell, do solemnly swear that there is situated in the County of Austin, State of Texas, a certain building premises, room and place, to-wit: situated on the West bank of Brazos River approximately 300–400 yards South of River Bridge on Interstate Highway 10 between Sealy and Brookshire, first building on left side of roadway traveling south after passing through two gates on property belonging to Billy Harrison who operates liquor store in Brookshire and being specifically described as a one story white metal side portable type building with car port and porch on front of building facing the road (west), premises entered by a screen door whereupon go up two or three steps and enter wooden front door, where betting, wagering and gaming with cards, and dice, is being conducted, and as a place where gaming tables, cards, dice and other gambling paraphernalia, devices and equipment is kept and exhibited for the purpose of gaming and where people resort for the purpose of gambling with cards, dice and other devices, in violation of the laws of the State of Texas, and which said place as above designated and described, GRADY WHITEHEAD, LAWRENCE GUINN and DENNIS BROWN are supposed to have charge of, and that they and each of them are keeping and interested in keeping said premises, building, rooms and place, and knowingly permit said gaming tables, cards, dice, and equipment and gambling paraphernalia to remain in their possession and in premises under their control, which said building, premises, room and place is above described.

On the afternoon of Wednesday, April 26, 1967, I, J. L. RUNDELL, received information that GRADY WHITEHEAD, LAWRENCE GUINN and DENNIS BROWN were involved in keeping and exhibiting one crap table for the shooting of dice and two blackjack tables, all said tables being for the purpose of gaming wherein money was bet thereon. This source of information and different sources relate that

the affidavit was insufficient to establish probable cause to support a search warrant. After the Supreme Court decision in United States v. Harris, 1971, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723, we have no doubt that the affidavit was sufficient to support a finding of probable cause.

In Harris, a warrant authorizing a search of the defendant's premises was issued on the basis of a federal tax investigator's affidavit.[5] The Supreme Court held the affidavit sufficient, distinguishing Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723

and Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, and relying on Jones v. United States, 1962, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697. The affidavit submitted in the instant case has the elements found to be important in *Harris* and more. First, the affidavit in the case at bar contains "ample factual basis for believing the informant," 403 U.S. at 579, 91 S.Ct. at 2080, even though the informant is unnamed. The informants related to the affiant that they had seen gambling tables and gambling equipment on at least three occasions while the inform-

the aforementioned persons continued to keep and exhibit these gaming tables and are at the present time keeping and exhibiting these gaming tables and same are located and situated in the room immediately adjoining the front door of said house above described. The sources of information relate that they have been to this location on three occasions and have actually participated in the gaming above described.

Both of the aforementioned sources of information are familiar with the undersigned and other members of the Texas Department of Public Safety.

This same information regarding the illicit keeping and exhibiting of gaming tables above described conducted by the above mentioned individuals has been given to the undersigned and to other members of the Texas Department of Public Safety.

To disclose the name of the aforementioned would endanger their lives. Affiant can only advise that on previous occasions these sources have given information regarding illicit gambling operations that was found to be correct and thereby the undersigned does believe that there is now an illicit gaming operation being conducted in the above described premises which is not a private residence occupied by a family.

Wherefore I ask that a warrant to search the above described premises, building, room and place and to discover and seize the said gambling tables, cards, dice and other gambling paraphernalia, devices and equipment be issued forthwith in accordance with law, and for a warrant to arrest said above named persons and such other person found therein aiding in keeping said premises, building, room and place a gambling house, or trying to escape.

/s/ J. L. RUNDELL

SWORN TO AND SUBSCRIBED before me this the 5th day of May, A.D., 1967.

/s/ H. C. FRIZZELL
Justice of the Peace, Precinct No. 1, Austin County, Texas."

5. "Roosevelt Harris has had a reputation with me for over four years as being a trafficker of nontaxpaid distilled spirits, and over this period I have received numerous information [sic] from all types of persons as to his activities. Constable Howard Johnson located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time. This date, I have received information from a person who fears for their life [sic] and property should their name be revealed. I have interviewed this person, found this person to be a prudent person, and have, under a sworn verbal statement, gained the following information: This person has personal information of and has purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past 2 weeks, has knowledge of a person who purchased illicit whiskey within the past two days from the house, has personal knowledge that the illicit whiskey is consumed by purchasers in the outbuilding known and utilized as the 'dance hall,' and has seen Roosevelt Harris go to other outbuilding, located about 50 yards from the residence, on numerous occasions, to obtain whiskey for this person and other persons."

ants were participating in the gambling.[6] In *Harris,* the Court relied on "personal and recent observations by an unidentified informant of criminal activity [and] factor showing that the information had been gained in a reliable manner." 403 U.S. at 579, 91 S.Ct. at 2080. An important factor was the informant's statement that he had personal information of illicit whiskey because he had purchased some. Second, the affiant in the instant case states that his informants had on other occasions given information regarding illicit gambling operations that was found to be accurate. In *Harris,* the affiant merely stated that the informant was "prudent". See also Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Jones v. United States, 1962, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. Third, the affiant in the instant case stated that the information related by his unnamed informants was corroborated by other sources. This factor was absent in

*Harris* but present and important in *Jones, supra.* See also Aguilar v. Texas, *supra;* Spinelli v. United States, *supra.* Finally, although the present affiant does not relate, as was the case in *Harris,* personal knowledge of the defendants' reputation, we do not read *Harris* as requiring such a statement in view of other "substantial basis for crediting the hearsay". 403 U.S. at 581, 91 S.Ct. at 2080. See Aguilar v. Texas, 1964, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 12 L.Ed.2d 723; Jones v. United States, 1962, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.[7]

An F.B.I. agent searched the mobile home on December 6, 1967, and took photographs of the vehicle identification number of the trailer which had been burned away. These photographs were introduced at trial. The appellants contend that the trial judge should have excluded this evidence because the search warrant upon which the search was based was invalid. They again attack the sufficiency of the affidavit upon which a finding of probable cause was based.[8]

---

6. As to the remoteness of the informant's information, see United States v. Harris, 1971, 403 U.S. 573, 579 fn.*, 91 S.Ct. 2075, 29 L.Ed.2d 723.

7. The affidavit clearly meets "Aguilar's two-pronged test" as explained in *Spinelli, supra.* The affidavit sets forth "the 'underlying circumstances' necessary to enable the magistrate independently to judge of the validity of the informant's conclusion." 393 U.S. at 413, 89 S.Ct. at 587. In addition, there is support for the claim that the informant is credible or his information reliable.

8. "The undersigned being duly sworn deposes and says: that he has reason to believe that on the premises of Harry George Harrison, located on the West bank of the Brazos River, South of Interstate 10, Sealy, Austin County, Texas, there is concealed certain property namely; a 54' x 24' DeVille Custom-made Trailer, Serial No. D54–DV–97, which trailer had been purchased in Roanoke, Texas, in April, 1964, by one Billy Ray Grimes and thereafter transported in interstate commerce to Checotah, Oklahoma in approximately June of 1966, for the pur-

pose of and which was used for gambling.

Thereafter, prior to March, 1967, the above-described trailer was transported in interstate commerce from Checotah, Oklahoma, to the above-described location in Sealy, Austin County, Texas, for the purpose of engaging in various gambling type operations, which is a violation of 18 U.S.C.A. 1952.

The facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

In June, 1966, Mr. William H. Pursley, formerly employed by the Artcraft Mobile Homes, Fort Worth, Texas, the manufacturer of the above-described trailer, transported the said trailer from Forney, Texas, to Checotah, Oklahoma, for two persons identified as Jere Bedford Jordan and Billy Ray Grimes.

In June 1966, Agent Clifford Roberts, Oklahoma State Bureau of Investigation, and other officers of that organization, and the McIntosh County Sheriff's Office, conducted a raid on gambling operations at a place called the "Anchor Inn" located at Checotah, Oklahoma, at which location the above-described trailer was believed to be used

This time, however, the attack on the affidavit challenges the remoteness of the information contained therein.

■ It is true that an affidavit used to support a search warrant "must speak as of the time of the issue of that warrant". Sgro v. United States, 1932, 287 U.S. 206, 211, 53 S.Ct. 138, 140, 77 L.Ed. 260, 263. See Rider v. United States, 5 Cir. 1966, 355 F.2d 192. There is, however, no arbitrary time limit on how old the information contained in an affidavit may be. Two factors convince us that the search warrant was validly issued and the photographs properly admitted. First, the photographs of the identification number and the testimony of the F.B.I. agent were the only evidence gleaned as a result of the search. The identification number is permanently affixed to the trailer. The fact that the trailer was still located at the location to be searched, a fact attested to in the present tense by the affiant, meant that the serial number was presently there. The situation would be different had the search revealed movable gambling paraphernalia about which no recent information was contained in the affidavit. See Rider v. United States, 5 Cir. 1966, 355 F.2d 192. Although the search warrant, by its terms was not limited to an examination of the vehicle identification number, the only evidence from the search adduced at trial concerned the number. When evaluating a challenge to the admissibility of evidence based on an allegedly invalid search warrant, we must concern ourselves with realities. The appellants cannot complain of evidence which might have been discovered and introduced, but was not. Also, the affidavit contained information about a course of conduct extending over a twelve month period culminating in a raid which yielded gambling paraphernalia. This history was relevant to the magistrate in assessing probable cause. See United States v. Harris, 1971, 403 U.S. 573, 579 fn.* 91 S.Ct. 2075, 2079, 29 L.Ed.2d 723.

### III. *Trial Rulings*

■ Next, the appellants complain of the allegedly improper impeachment of defense witness Cullen James Rowan. Rowan was confronted on cross-examination with prior inconsistent statements made to F.B.I. agents. The impeachment was intended to attack Rowan's credibility and cast doubt on his testimony as to the reason behind the stop in Fort Worth. The appellants complain that a sufficient foundation was not laid for the impeachment and that the admission of additional evidence as to the prior inconsistent statements was improper. See 3 Wharton's Criminal Evidence §§ 917–921, pp. 339–348 (12th ed. 1955); III Wigmore on Evidence §§ 1017–1029, pp. 684–709 (3rd ed. 1940). We cannot agree. Our study of the record convinces us that a sufficient foundation was laid

as a part of said gambling operations. In about January or February, 1967, the above-described trailer was transported in interstate commerce from Checotah, Oklahoma, to the property of Mr. Harry George Harrison, on the West Bank of the Brazos River, South of Interstate 10, Sealy, Texas, for the purposes of engaging in gambling activities.

Thereafter, on or about May 5, 1967, Texas Ranger, J. A. Rundell, and other State Officers raided a gambling operation in a trailer fitting the description of the above-mentioned trailer and at the location described above, at which time certain gambling paraphernalia and equipment were found in said trailer and seized by the State Authorities.

Special Agent Alfred G. Gunn, Federal Bureau of Investigation, has observed this said described trailer at the above location. Special Agent Gunn received information from confidential sources that have proven reliable on more than one occasion that said trailer located on the property set forth above in this affidavit had been and was being used for the purpose of gambling during the months of February, March, April and May, 1967.

/s/ Alfred G. Gunn

ALFRED G. GUNN, Special Agent
Federal Bureau of Investigation

SWORN TO before me, and SUBSCRIBED in my presence, this 30th day of November, 1967.

/s/ O'Neal Morris
United States Commissioner."

for the use of the impeaching testimony and that no unfair surprise resulted. Further, the prior inconsistent statements concerned the principal defense theory. This cannot be considered a collateral or immaterial matter. The admission of additional testimony as to the prior inconsistent statements was proper.

■ The appellants complain of remarks of the prosecutor which tended to disparage Rowan's veracity in the eyes of the jury. The trial court sustained objections to the remarks and instructed the jury to disregard them. Any error was harmless. See F.R.Crim.Pr. 52.

■ Finally, the appellants contend that the trial court erred in admitting into evidence "mug shots" of the appellants. See Barnes v. United States, 1966, 124 U.S.App.D.C. 318, 365 F.2d 509; see also United States v. Silvers, 7 Cir. 1967, 374 F.2d 828; United States v. Harman, 4 Cir. 1965, 349 F.2d 316; United States v. Reed, 7 Cir. 1967, 376 F.2d 226; Smith v. Rhay, 9 Cir. 1969, 419 F.2d 160. Although, under certain circumstances, admission of suggestive photographs tending to allude to a criminal record or bad character, might well result in reversible error, this is not such a case. Here, the admission of the photographs will not result in reversal because the door for the admission was opened by the defendants. Identification was at issue, and defense counsel cross-examined a government witness about the use of the photographs for identification. It was proper for the government then, on redi-rect, to introduce the photographs to clear up the doubt as to the identification.

IV. *Instructions*

■ The appellants argue that the jury instructions were improper for two reasons. First, they contend that the instructions failed to instruct the jury precisely on the principal defense theory. See Strauss v. United States, 5 Cir. 1967, 376 F.2d 416; Perez v. United States, 5 Cir. 1961, 297 F.2d 12. The defendants attempted to prove, in the trial court, that the trailer was moved from Oklahoma to Fort Worth with no intent to travel to Sealy, Texas, to engage in gambling. Any intent to carry on a gambling enterprise existed only during the Fort Worth to Sealy journey thereby negating the element of the crime which requires travel in interstate commerce with the requisite intent and raising the defense of abandonment. We have studied the trial court's instructions as well as those requested by the defendants. We hold that the instructions were entirely adequate in presenting the defense theory.[9]

■ Second, the appellants contend that the trial judge committed reversible error by submitting the case to the jury on a theory not set out in the indictment. The indictment charged travel from Checotah, Oklahoma to Sealy, Texas, in violation of 18 U.S.C. § 1952.[10] The trial judge charged the jury as follows:

> The defense theory was explained and considered at length earlier in the instructions.

9. One portion of the instructions stated: "Finally to constitute an offense under either count, the conduct of any one of the defendants must have been continuous. For example, a movement of the trailer in interstate commerce from Oklahoma to Fort Worth followed by a movement of the trailer from Fort Worth to Sealy, is not an offense if the two movements are independent of one another. On the other hand, a mere temporary delay in transit, not accompanied by any formation of a new, independent intent by the defendant or defendants, is not sufficient to disrupt the continuity of action alleged in the indictment."

10. The indictment charged: "That from on or about January 12, 1967, and continuously, thereafter until on or about May 5, 1967, in the Southern District of Texas and within the jurisdiction of this Court [the Appellants] unlawfully, willfully and knowingly did travel and cause travel in interstate commerce from Checotah, Oklahoma, to Sealy, Austin County, Texas, [in violation of 18 U.S.C. 1952]."

Specifically, defendants are charged with conspiring to transport the trailer or cause it to be transported from Oklahoma to Fort Worth and on to Sealy, Texas, in connection with an unlawful business enterprise involving gambling in Sealy.

The appellants argue that the insertion of the words "to Fort Worth and on" between "Oklahoma" and "to Sealy, Texas" had the effect of amending the indictment. We cannot agree. If anything, the alleged interjection of the abandonment defense into the indictment was helpful to the appellants.

### V. Other Alleged Errors

The appellants raise three further grounds for reversal. We find them all to be without merit. First, the appellants contend that the indictment was duplicitous and that the Government should have been required to elect upon which charge it would proceed. We believe that the indictment adequately apprised the defendants of the charges against them, enabled them to prepare a defense, and protected against subsequent prosecution for the same offense. Second, the appellants argue that the convictions must be reversed because the district court took judicial notice of the statutes of the State of Texas without requiring proof of those statutes or announcing that it was taking judicial notice of the statutes. The trial judge properly charged the jury on the applicable Texas statutes as on any other question of law; the appellants' contention is clearly without merit. See Lamar v. Micou, 1885, 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94. Finally, the appellants complain of remarks by the prosecutor during his closing argument to the jury. When read in context, the remarks, although questionable, were not so likely to effect the jury's verdict as to require reversal. Any error involved was harmless. F.R.Crim.P. 52.

Affirmed.

## ON PETITIONS FOR REHEARING AND PETITIONS FOR REHEAR-IN EN BANC

### PER CURIAM:

The Petitions for Rehearing are denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petitions for Rehearing En Banc are denied.