**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Billy Ray SILVERS, Defendant-Appellant.**

**No. 15740.**

United States Court of Appeals
Seventh Circuit.

Feb. 21, 1967.

Rehearing Denied April 17, 1967
en banc.

Sigmund J. Beck, Sidney Mishkin, Indianapolis, Ind., for appellant.

Alfred W. Moellering, U. S. Atty., South Bend, Ind., Joseph F. Eichhorn, Asst. U. S. Atty., Fort Wayne, Ind., Kenneth P. Fedder, Asst. U. S. Atty., South Bend, Ind., for appellee.

Before DUFFY, Senior Circuit Judge, and SWYGERT and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This is an appeal from Billy Ray Silvers' conviction for assaulting and putting the life of Vernon E. Laue in jeopardy while aiding and abetting in the robbery of a federally insured bank. The information alleged a violation of Section 2113(d) of the Criminal Code (18 U.S.C. § 2113(d)).

According to the Government's evidence, on the evening of December 15, 1965, Silvers and co-defendant Orrin Scott Reed entered Mr. Laue's home in Rolling Prairie, Indiana. Both men wore transparent nylon stocking masks. Silvers was armed with a sawed-off shotgun. Laue was forced to accompany Reed to the Rolling Prairie branch of the Citizens Bank of Michigan City, Indiana; Laue was manager of that branch. Silvers remained at the Laue home pointing his shotgun at Mrs. Laue and the three Laue children.

When Reed and Laue reached the nearby branch bank, Laue opened the vault, removed $8,509 therefrom and turned it over to Reed. Reed and Laue then returned to the Laue home. Thereupon Reed and Silvers escaped with the loot, approximately 20 minutes after first entering the Laue residence.

Silvers was arrested near Bloomington, Indiana, three days thereafter. He was then using the alias George Blue. A sawed-off shotgun was discovered in his motel room there. In applying for the appointment of counsel, Silvers advised the District Court that he had recently escaped from the Indiana State Prison.

On January 3, 1966, Silvers and Reed were charged by information with the robbery of this branch bank. Under the Criminal Justice Act (18 U.S.C. § 3006A), John O. Humphreys of South Bend, Indiana, was appointed as counsel for Silvers. On January 6, 1966, Humphreys filed a motion for a psychiatric examination of Silvers to determine whether he was sane at the time of the alleged offense and whether he was competent to defend. In support of the motion, Humphreys advised the District Court that he had noticed differences in Silvers' behavior during four conferences with him. Humphreys apprised the District Court of Silvers' reformatory, jail, and prison record from the time he was 14 and mentioned that Silvers was a recent prison escapee. Humphreys also mentioned that Silvers' mother thought he needed psychiatric help from the time he was 16. As a result of this showing, the District Court appointed a psychiatrist to examine Silvers, but only to determine whether he was competent to stand trial. After receiving the psychiatrist's report, the District Court found that Silvers was able to understand the proceedings and to assist in his defense. Thereupon, Silvers pleaded not guilty.

In his opening statement at the trial, Silvers' counsel told the jury that the evidence would show that Silvers was not sane on the evening of the offense.

Silvers complains that prejudicial error occurred at the joint trial of Silvers and Reed because: (1) the jury was permitted to hear evidence that might indicate he had committed other crimes and (2) a dual-shot prison photograph of Silvers was admitted into evidence.

As to the first alleged error, Gene Neff, a state police trooper, was called as a witness for the Government. Without objection, he testified that one of the detectives at the prison[1] gave Neff "two mug shots" and requested that Neff show them to Mr. and Mrs. Laue. For that purpose, Neff called on Mrs. Laue on December 17. The following colloquy then occurred during Neff's direct examination by the Assistant United States Attorney:

"Q. You say mug shots, what is that?

A. They are photographs of former inmates of the State Prison.

By Mr. Humphreys: Your Honor, I will object to the testimony by the witness as being unresponsive to the question asked by Mr. Fedder. Also an improper topic to bring out in examination of this or any other witness.

By The Court: Yes, the objection is sustained. That's right."

Neff next testified that the two photographs were of Charles Spiker and Billy Ray Silvers, and that Mrs. Laue identified the photograph of Silvers as the intruder who terrorized her and the children with his shotgun during the neighboring bank robbery.

Over objection of Silvers' counsel, the District Court received in evidence the photograph of Silvers. The photograph actually consists of two side-by-side $2 \times 2\frac{1}{4}$ inch pictures of Silvers, separated by a black line. The left side of the dual photograph is a profile view, and the right side is full face. The garb is nondescript,[2] and there are no identifying marks on the exhibit.

Silvers also asserts that prejudicial error occurred during the direct examination of FBI Agent Irving K. Owen, a Government witness. Owen testified that he had conversed with Silvers on December 18, and that Silvers denied any knowledge of the Rolling Prairie bank robbery. Then the following colloquy occurred:

"Q. Did you talk to him [Silvers] about his whereabouts?

A. Yes, Sir. I asked him where he was at the time of this robbery and if he also knew the other subject for whom there was a warrant issued by the name of Reed.

Q. What did he say?

A. He stated that he knew Reed formerly but that he [Silvers] had not seen Reed since he [Silvers] had escaped. This [conversation] was on December 18th."

At this point, Silvers' counsel moved unsuccessfully for a mistrial. At the close of the trial, the District Court gave defendant's instruction No. 8 to the effect that a jury must not consider evidence of a defendant's previous conviction of a felony. The Court also instructed the jury not to consider any improper questions or stricken answers.

As to the testimony showing that Silvers had been imprisoned, the general rule of course is that evidence that an accused has committed another crime is inadmissible, and that any error in admitting such evidence cannot always be cured by sustaining objections or by instructions. United States v. Magee, 261 F.2d 609, 611, 612–613 (7th Cir. 1958); United States v. Reed, 376 F.2d 226 (7th Cir. 1967). Similarly, it is error to admit photographs that on their face disclose past incarceration.[3] United States v. Harman, 349 F.2d 316, 320 (4th Cir. 1965); Barnes v. United States, 365 F.2d 509 (D.C.Cir. 1966). However, under the circumstances of this case, we

---

1. Later direct testimony indicated that Neff obtained the photographs from Sgt. Edward Burke, a detective at Police Post 1, Dunes Park, Indiana, rather than from the prison.

2. However, on the left shoulder of the full-face photograph of Silvers, a portion of the cord appears to which the prisoner's identifying number was probably attached.

3. We need not reach the question whether the receipt in evidence of this photographic exhibit of Silvers was reversible error. See United States v. Reed, 376 F.2d 226 (7th Cir. 1967).

conclude that the errors of which defendant complains were not prejudicial and therefore must be disregarded under Rule 52(a) of the Federal Rules of Criminal Procedure.

The first trial reference to Silvers' past incarceration occurred during the direct examination of State Trooper Neff. Trial counsel for Silvers recognized that the prosecutor was not deliberately seeking to inject damaging facts into the record,[4] for the first portion of the objection was that the testimony was unresponsive. After trial counsel's objection was sustained, he brought out on cross-examination that the photographs of Silvers and Charles Spiker were prison photographs. He made no attempt to have that testimony stricken. On cross-examination of Sheriff Arnold, defense counsel asked whether some of the photographs shown to Mr. and Mrs. Laue "were from the files of the FBI." Later in the cross-examination of Sheriff Arnold, he elicited the answer that in addition to the photographs of Silvers and Reed, Arnold exhibited "8 or 10 other photographs from the Indiana State Prison" to the Laues. There was no motion to strike this answer as nonresponsive or prejudicial.

Similarly, in cross-examining Mr. Laue, defense counsel asked Laue whether Neff explained why he showed Laue the two particular photographs of Silvers and Spiker. Mr. Laue replied:

"I think he [Neff] said something to the effect that they had some pictures from the prison that they hadn't shown us [Mr. and Mrs. Laue]".

Again there was no objection or motion to strike. Instead counsel then asked Mr. Laue "and these were, as far as you know, photographs from the prison files?"

Although Silvers later moved for a mistrial when FBI Agent Owen mentioned Silvers' escape from prison, Silvers' counsel, in putting in his case, interrogated Deputy Marshal Horton as to whether Silvers had escaped from the Michigan City Prison on December 6, 1965.

At the oral argument here, defendant's appellate counsel urged that Neff's and Owen's references to Silvers' criminal record had compelled the plea of insanity. The record shows to the contrary. Thus in support of his pretrial motion for the appointment of a psychiatrist, Silvers' trial counsel described Silvers' prison record in some detail and mentioned that Silvers was an escapee from prison. Consistently with his argument in support of that motion, Silvers' counsel's opening statement informed the jury that Silvers was pleading insanity. Also, in the closing argument, Silvers' alleged insanity was the first topic mentioned to the jury, and at length (nine pages of the transcript). When Silvers' counsel reached the merits in his closing statement, he relied on Silvers' escape from prison to show that Silvers would have been in hiding at the time of the bank robbery. Our study of the record reveals that Silvers' counsel referred again and again to Silvers' criminal past to bolster his insanity defense. It is immaterial that the Government first adverted to defendant's past incarceration, for it is apparent from the record that defendant always intended to show that his mental stability had been impaired by incarceration from the time he was 13 or 14 years old until he escaped from his last prison sentence a few days before this offense was committed.

As soon as State Trooper Neff first revealed that Silvers had been in the Indiana State Prison, Silvers' trial counsel had to decide whether to ignore Silvers' past record, raising the mistrial denial on appeal. Instead he deliberately chose to adhere to his preconceived strategy of demonstrating Silvers' insanity mainly through his long prison experiences. Although the insanity defense ultimately proved unsuccessful, at least it persuaded the jury to "recommend that the defendant, Billy Ray Silvers, receive

4. See the dissenting opinion of Chief Justice Warren in Spencer v. State of Texas, 385 U.S. 554, 87 S.Ct. 648, p. 656, 17 L.Ed.2d 606.

832

psychiatric treatment for the possibility of rehabilitation."

 Here the facts of Silvers' unfortunate past brought out in the insanity defense alleviated and indeed erased the harmful effect of Neff's and Owen's references thereto. It is well settled that a defendant's reference to or use of an erroneously admitted line of evidence cures or waives the error. As Judge Frank explained in United States v. Bramson, 139 F.2d 598, 600 (2d Cir. 1943), certiorari denied, North v. United States, 321 U.S. 783, 64 S.Ct. 636, 88 L. Ed. 1075:

> " * * * defendants themselves, having at first objected to such testimony, subsequently introduced testimony of a witness who sufficiently referred to those [wrongful] transactions to make the government's evidence on the subject admissible."

Likewise, in Jarabo v. United States, 158 F.2d 509, 514 (1st Cir. 1946), the Court held that an appellant could not object on appeal to the introduction of evidence of his prior misconduct when, as here, he subsequently relied on similar evidence to prove his defense of insanity. To the same effect see 1 Wigmore on Evidence (3d ed. 1940) § 18(D), pp. 344–346; McCormick on Evidence (1954) § 855, p. 129.[5]

 The extensive use of Silvers' criminal record to support his insanity defense vitiated the earlier references contained in the Neff and Owen testimony. Because this record shows that Silvers' trial counsel was always planning to bring out Silvers' criminal history, it does not lie in his mouth to request its exclusion after so using it. Jarabo v. United States, supra, 158 F.2d at p. 514. In this setting no prejudicial error occurred.

Under the Criminal Justice Act, Sidney Mishkin of the Indianapolis Bar was appointed to represent Silvers on appeal. The Court wishes to commend Mr. Mishkin for the excellence of his services on defendant's behalf.

The judgment of the District Court is affirmed.

5. Cf. Lurk v. United States, 111 U.S.App. D.C. 238, 296 F.2d 360, 361 (1961), affirmed, 370 U.S. 530, 82 S.Ct. 1459, 8 L. Ed.2d 671; Cram v. United States, 316 F.2d 542, 546 (10th Cir. 1963); United States v. Gruber, 123 F.2d 307, 310 (2d Cir. 1941).