UNITED STATES of America, Appellee,

v.

Adelard VACHON, Defendant,
Appellant.

Nos. 87–1737, 87–1738.

United States Court of Appeals,
First Circuit.

Heard Nov. 1, 1988.

Decided March 15, 1989.

Robert L. Sheketoff, by Appointment of the Court, with whom Zalkind, Sheketoff, Homan, Rodriguez & Lunt, David Kelston and Geller & Kelston, Boston, Mass., were on brief, for defendant, appellant.

Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., for appellee.

Before BOWNES, BREYER and SELYA, Circuit Judges.

BREYER, Circuit Judge.

The government tried the appellant, Adelard Vachon, for bank robbery. 18 U.S.C. § 2113(a) (Supp.1988). The facts are not contested: Vachon apparently conceded that on two separate occasions (February 21 and March 14, 1986), he entered the branch of the Boston Five Cents Savings Bank located on 426 Boylston Street in Boston, and that on each occasion he obtained money by threatening to blow up the bank with an "explosive" that he pretended to have in a bag. Rather, his basic defense was insanity. 18 U.S.C. § 17 (Supp.1988). And, his conduct (suicide attempt, refusal to cooperate with his lawyers, outbursts in court, insistence upon testifying to facts that harmed his defense) suggested that his insanity defense might have merit. Before trial the court held a competency hearing; it found Vachon competent to stand trial. After trial, the jury, rejecting his insanity defense, convicted him of bank robbery. Subsequently the court punished him for contempt of court committed during the trial. Fed.R.Crim.P. 42(a). Vachon appeals both his robbery and his contempt convictions. We have reviewed the record and conclude that the district court committed no legal error. Hence, we affirm the convictions.

1. *Competency.* The district court, after a hearing, found appellant

mentally competent to stand trial. To put the matter in terms of the appropriate legal standard, the court decided that the evidence failed to show that

> the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense....

18 U.S.C. § 4241(d) (1982). Appellant argues that this finding is "clearly erroneous" and that the evidence shows he was "unable ... to assist properly in his own defense."

After reviewing the record in detail, we agree with the appellant that both before and during his trial he *did not* "assist properly in his defense." But, the legal question before the judge concerned not what he *did* do. It concerned what he was *able* to do. The district court found that he was *unwilling* to assist, not that he was *"unable"* to do so. And, the record contains adequate legal support for this conclusion.

For one thing, the court heard the prosecution's expert psychiatrist, who had thoroughly examined appellant several months before the hearing, testify that he was competent and able to cooperate with his attorney. The court heard the appellant's own psychiatrist state that "he does meet all the legal criteria required for mental competency." And, the court heard both prosecution and defense counsel recommend that he be found competent.

It is true that appellant's psychiatrist, later during the hearing, after consulting with Vachon and his attorney, backtracked, stating that Vachon "does not meet the one [criterion] wherein it's required that he be able to confer with his lawyer in his own defense;" but when later asked by the prosecutor whether he really meant that Vachon "is unable to cooperate" with his lawyer, the defense psychiatrist stated that he is able to cooperate but "he just is very ornery about it and won't cooperate with the counsel." The defense psychiatrist then went on to say,

> I say that he is ornery and will not at this time cooperate with counsel. I believe he is able to do so.

For another thing, the district court not only observed the appellant first hand (an obvious help in deciding whether defendant's obstructive behavior flowed from lack of capacity or lack of will), but also paid close attention to the competency issue. It ordered the competency hearing *sua sponte.* And, the judge remained alert to the possibility that later events, at trial, could lead it to change its mind. *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Indeed, the court said that

> if as additional evidence comes before me in the trial I become persuaded that he is not competent to stand trial, I probably should declare a mistrial and enter whatever order is appropriate which would forestall trial of the case absent some change of circumstances.

Although appellant behaved in a highly obstreperous, uncooperative, and possibly self-destructive way during the trial, his behavior was not so radically different from his pretrial behavior as to undermine the court's earlier determination that the behavior was willful or to require the court *sua sponte* to order additional competency hearings. *United States v. Voice,* 627 F.2d 138, 141 (8th Cir.1980) (refusal to conduct a second competency hearing must be affirmed unless the court abused its discretion in light of new evidence); *United States v. Clark,* 617 F.2d 180, 185 (9th Cir.1980) (in determining whether developments during the course of the trial suffice to create a reasonable doubt as to defendant's competency, the court should consider all available pertinent evidence; the emergence of such reasonable doubt in the mind of the trial judge is the consequence of his total experience and his evaluation of the events at trial).

All this is to say that our reading of the record finds adequate support for the trial court's conclusion that appellant was mentally competent to stand trial. The law commits the relevant legal determinations to the trial court in the first instance. And,

we cannot say that that court abused its lawful powers or that its decision was clearly arbitrary. *United States v. Collins*, 525 F.2d 213 (1st Cir.1975); *In re Harmon*, 425 F.2d 916 (1st Cir.1970). The cases appellant cites to the contrary involve instances where the court held no competency hearing before trial. *Drope v. Missouri, supra; United States v. Pogany*, 465 F.2d 72 (3d Cir.1972).

■ 2. *Pretrial Detention.* Appellant points out that he suffered several months of "pretrial detention." The Bail Reform Act permits pretrial detention where "no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e) (Supp.1988). Vachon argues that the evidence before the magistrate did not satisfy the statutory standard; it did not show a significant risk of flight. The issue in respect to pretrial release, however, is moot. *See Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (claim to pretrial bail became moot once defendant was convicted). Insofar as appellant claims that *unlawful* pretrial detention prejudiced his ability to defend himself, we reject the premise. That is to say, appellant's lack of family ties and other connections to the community, his lack of assets, his three prior bank robbery convictions, his prior sentence of ten years, the seriousness of the crimes charged, and the fact that conviction could well mean imprisonment for the rest of his life, provide adequate grounds in support of the magistrate's conclusion that "no condition or combination of conditions of release would reasonably assure his appearance at trial." Thus the magistrate's order was lawful. We recognize that during defendant's pretrial detention at Bridgewater Hospital, he was hurt through no fault of his own. We also recognize that he would have preferred a veterans' hospital to Bridgewater. Still, defendant had access to counsel and to a competent psychiatrist who served as his witness. We find nothing in the conditions of his confinement that violated the federal Constitution.

■ 3. *Speedy trial.* The Speedy Trial Act requires that the government bring appellant to trial within seventy days "from the filing date [of the indictment or the date] defendant ... appeared before a judicial officer of the court" in which the indictment against him "is pending." 18 U.S.C. § 3161(c)(1) (1982). In this case appellant first appeared before a magistrate on May 2, 1986. His trial began on June 16, 1987. His trial thus began not seventy days, but thirteen months, after his arraignment. He argues that the government therefore violated the statute.

The problem with appellant's argument is that the Act does not count days "resulting from any proceeding, including any examinations to determine the mental competency ... of the defendant," 18 U.S.C. § 3161(h)(1)(A), nor "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C. § 3161(h)(1)(F). Here, the trial court properly excluded from the "speedy trial" count numerous days involving mental examinations, changes of counsel, and the pendency of various of appellant's motions. The court, for example, excluded almost all the thirteen months in light of the fact that appellant's motion to exclude certain evidence was pending from May 14, 1986 until June 16, 1987. Appellant, pointing to *United States v. Mitchell*, 723 F.2d 1040 (1st Cir.1983), argues that this delay is excludable from the count only insofar as it is "reasonably necessary." He overlooks the legal fact, however, that the Supreme Court, in *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986) wrote that "all time between the filing of a motion and the conclusion of the hearing on that motion [is excludable], *whether or not a delay in holding that hearing is 'reasonably necessary'.*" 476 U.S. at 330, 106 S.Ct. at 1876 (emphasis added). In light of *Henderson* and our post-*Henderson* cases, *United States v. Papaleo*, 853 F.2d 16 (1st Cir. 1988); *United States v. Torres–Lopez*, 851 F.2d 520 (1st Cir.1988); *United States v. McAfee*, 808 F.2d 862 (1st Cir.1986), the exclusion was legally proper, as, for that

matter, were the other exclusions to which the district court pointed.

■ Appellant also argues that the thirteen month delay violated the Constitution's guarantee of a speedy trial. U.S. Const. amend. VI. Having examined the reasons for the delay (including the need for mental examinations, the efforts to obtain relevant records, appellant's changes of counsel), the likely prejudice the delay caused (which does not seem great), and the fact that appellant did not raise the constitutional speedy t·ial issue until two days before trial, we can find no violation of any Constitutional right. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. Colombo,* 852 F.2d 19 (1st Cir.1988); *United States v. Johnson,* 579 F.2d 122 (1st Cir. 1978).

■ 4. *Sufficiency of the Evidence.* Appellant argues that the evidence was not sufficient to show an essential element of the crime, namely that the Federal Deposit Insurance Corporation insured the deposits in question. 18 U.S.C. § 2113 (1982 & Supp.1988). Appellant not only raises this issue for the first time on appeal, but, before trial, his counsel also told the court "The facts aren't going to be contested." Obviously, if the appellant had raised this point below, the government might have submitted additional evidence. Under these circumstances, we should not consider the point. *United States v. Alemany-Rivera,* 781 F.2d 229 (1st Cir.1985), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1469, 89 L.Ed.2d 725 (1986) (issue of sufficiency of evidence to sustain conviction was not raised below and was thus not properly before Court of Appeals).

In light of the difficulties that counsel has had with appellant, however, we point out that were we to consider the merits of the argument, it would make no difference. The evidence consisted of the bank's district manager testifying that:

1) the FDIC insures the Boston Five Cents Savings Bank deposits,

2) "we have the FDIC certificates on *all* our branches" (emphasis added),

3) "we have the number at our disposal",

4) and the certificate number "is 18562-1".

This evidence is sufficient for a reasonable juror to conclude that the FDIC insured the deposits in question. *Compare, e.g., United States v. Jimenez-Perez,* 869 F.2d 9 (1st Cir. 1989). We need not consider appellant's claim that this testimony somehow improperly rested upon hearsay sources, for no one objected to this testimony at trial.

■ 5. *Prejudicial Evidence.* Appellant objects to the admission into evidence of statements that he made when he was arrested. The arresting officer testified that appellant then said that:

1) "he would be dead within 30 days because he had AIDS",

2) "Charlie, the person that he called on the telephone, had been his homosexual lover for 28 years" and,

3) "Charlie should not be implicated ... in either ... this or in the previous robbery."

Appellant says these statements were not relevant. But that is not so. Appellant's entire defense consisted of his claim that he was insane at the time of the robbery. The first of these statements, made at the very time, suggests he knew right from wrong, that he was looking for excuses that might somehow justify or explain wrongful conduct. The second and third of these statements suggest an awareness of the consequences of his actions and a rational desire to protect someone for whom he had affection.

Appellant also says that the statements were unreasonably prejudicial. We are not certain whether, in the circumstances, they were significantly prejudicial. But, in any event, it is up to the trial court, not this court, to weigh probative value against prejudicial effect. Fed.R.Evid. 403. This is not so "exceptional" a case as to warrant our substituting our judgment for that of the trial court. *United States v. Marler,* 756 F.2d 206, 217 (1st Cir.1985); *United States v. Strahl,* 590 F.2d 10, 12 (1st Cir. 1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979).

■ 6. *Expert opinion.* Appellant argues that the district court should not have permitted the prosecution's psychiatric expert, Dr. Kelly, to testify that he

> could find no evidence that [Vachon] ... suffers from the kind of mental disease and defects which would remove the capacity to appreciate the wrongfulness of his actions, and his behavior at or around the time further reinforces that, in my view, and no evidence of a mental disorder which would prevent him from understanding the nature and quality of his acts.

Appellant says that admission of this testimony violates a rule that Congress recently enacted, namely Fed.R.Evid. 704(b), which states that

> [n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion ... as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto.

The Insanity Defense Reform Act of 1984, Pub.L. No. 98–473, makes insanity an affirmative defense to prosecution under federal statutes, 18 U.S.C. § 17, if, "at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." Appellant points out that Dr. Kelly's testimony seems to state "an opinion" that Vachon did not have the very "mental state" that would constitute the defense. We need not consider whether or not this is so, for the district court permitted Dr. Kelly to present his opinion for a different reason. When appellant's counsel objected to Dr. Kelly's opinion testimony, the court pointed out that the defense obtained precisely the same type of opinion from its own expert (who testified that appellant *did* have this very state of mind).

Under those circumstances, the court said, "it would be a monstrous ... way of proceeding, to have a fair trial, to let you raise this issue with me at this time, for the first time.... [Y]ou have opened the door to the responsive evidence of opinion testimony on this very issue by yourself offering opinion testimony.... [I]t would be so unfair to let the defense psychiatrist testify and prohibit this witness from doing so, I could see no possible reason ... to let you raise it for the first time."

We agree with the district court that, if this is error, it is "invited error." As Judge Weinstein points out, an "attorney can ... waive his client's right to raise an error on appeal by deliberately eliciting or relying on inadmissible evidence." J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[02] (1988). This would seem a strong instance of such "waiver." It was Vachon, through competent counsel, who initially elicited from his own expert an arguably inadmissible opinion as to his mental state. The trial judge considered it essential to create a fair impression in the juror's minds, to permit the prosecution to elicit similar testimony from its own witness. Vachon cannot now claim as error the government's efforts to obtain testimony of precisely the same kind. *Burgess v. Premier Corp.,* 727 F.2d 826, 834 (9th Cir. 1984) (attorney can waive client's right to raise error on appeal by eliciting inadmissible evidence himself); *United States v. White,* 377 F.2d 908, 911 (4th Cir.), *cert. denied,* 389 U.S. 884, 88 S.Ct. 143, 19 L.Ed. 2d 180 (1967) (when a defendant, acting through competent counsel, chooses to open up forbidden subject matter, he may not effectively complain that his own trial strategy denied him his rights); *United States v. Silvers,* 374 F.2d 828, 831 (7th Cir.), *cert. denied,* 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (1967) (defendant's reference to or use of erroneously admitted line of evidence cures or waives error). Appellant seeks to avoid this doctrine by pointing out that the prosecution did not object to the "opinion" evidence of his psychiatrist, but he did object to Dr. Kelly's testimony. This fact, however, is beside the point, for it is the very purpose of the "invited error" doctrine to prevent unfair trials by allowing the trial judge to disregard just such legal formalities when considerations of fairness as between the

parties permits, and the need to correct one-sided impressions of the facts requires, the admission of the evidence. *See Weinstein's Evidence, supra; Burgess v. Premier Corp., supra; United States v. White, supra; United States v. Silvers, supra.*

■ 7. *Additional Psychiatric Experts.* Appellant argues that the district court should have appointed an additional psychiatric witness to help him. 18 U.S.C. § 3006A(e) (Supp.1988). Our review of the record indicates that appellant obtained one well qualified psychiatric expert, that the government used only one expert, that appellant on his own asked the court for additional help, that appellant's counsel told the court he saw no need for the added help, that the court nonetheless considered appellant's request on the merits, and that the court ultimately determined that, in this case, one psychiatric expert for the defense should prove reasonable and sufficient. Having reviewed the record, we can find no legal basis for disagreeing with the district court's determination. Hence, that determination is lawful. *United States v. Rinchack,* 820 F.2d 1557, 1563 (11th Cir. 1987); *United States v. Goodwin,* 770 F.2d 631, 635 (7th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986); *United States v. Alden,* 767 F.2d 314, 318 (7th Cir.1984).

■ 8. *The Allen Charge.* The jury began to deliberate on June 22, 1987. The next day it told the court that it could not agree. The court then instructed it along the lines of the charge in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), stating:

Members of the jury, your verdict must represent the considered judgment of each juror. In order for you to return a verdict it is necessary that each juror agree to it. Your verdict must be unanimous. Also, any verdict you reach must be reached by bearing in mind the instructions I have given you about the heavy burden of proof of the government, the burden to prove each element of each charge beyond a reasonable doubt, and the burden on the defendant to prove the insanity defense by clear and convincing evidence.

It is your duty as jurors whether you are in a majority or in a minority to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.

Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, whether you are in a majority or a minority, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous, but do not surrender honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Appellant argues that this charge was erroneous because 1) the court did not specifically say "a jury has the right to disagree," and 2) the charge restated his burden of proving the defense of insanity. Appellant's first claim fails because 1) we have specifically "refrain[ed] from offering definite wording" for an *Allen* charge, *United States v. Angiulo,* 485 F.2d 37, 40 (1st Cir.1973), and 2) because the charge given contains the elements we have found essential. *United States v. Flannery,* 451 F.2d 880 (1st Cir.1971) (charge must make clear that "the onus of reexamination" is not on the minority alone and that the jury need "not feel compelled to reach an agreement," and it must reemphasize the burden of proof). Appellant's second claim fails because the court's statement about the burden of proof was not only accurate, but also a necessary component of the *Allen* charge.

■ 9. *The Contempt Convictions.* The district court summarily punished the appellant for contempt committed during his trial. During the trial, on June 17, 1987, responding to appellant's frequent interruptions, the judge warned the appellant,

[Y]our speaking when the court has not permitted you to speak will be in viola-

tion of the court's orders and will be an obstruction of the administration of justice and you will be subject to summary contempt.

Notwithstanding this admonition, the appellant, on several subsequent occasions, interrupted the proceedings. On Friday, June 19 appellant continued to speak after the judge warned him simply to "listen to the question and just answer the question." In light of appellant's continued efforts to speak when he was not asked to do so, the judge had the marshals remove him from the courtroom. On Monday, June 22, the appellant, on several occasions, interrupted the prosecution's argument to the jury with what the transcript states was "mumbling" and the court later referred to as an effort "to make remarks for the purpose of having them heard by the jury." The court said that appellant also "rose, showed a photograph to the jurors and spoke to them about that photograph." On Tuesday, June 23, after the jury retired to deliberate, the court, after briefly describing appellant's behavior and providing an opportunity for him to respond, summarily found him in contempt for the incidents of June 19 and June 22. Fed.R.Crim.P. 42(a).

Appellant argues that Rule 42(a), which gives the district court power to punish a "criminal contempt . . . summarily if the judge certifies that [he] saw or heard the contempt" committed before him, requires the court to punish the contempt immediately. But that is not the law. The Supreme Court has said that "summary" does not need to mean "immediate." *Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952). And, this circuit has stated that if the court "decides to weather the storm of misconduct, such a decision does not negate the power to impose summary punishment at the end of the proceeding." *Gordon v. United States*, 592 F.2d 1215, 1218 (1st Cir.), *cert. denied*, 441 U.S. 912, 99 S.Ct. 2011, 60 L.Ed.2d 384 (1979).

We can find nothing unreasonable or prejudicial here in the court's having waited until the jury retired to impose a punishment for contempt (90 days imprisonment for each of the two incidents). Appellant received fair warning. The delay apparent-

ly permitted the court to review the transcript of the relevant events and determine whether punishment was warranted. Given the closeness of punishment to contempt in time, the reasons for delay, and the warnings, we believe the determination of the court falls within the summary contempt power.

Cases cited by appellant do not support his contention, for they concern very different circumstances. *Cf. Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974) (due process is denied if summary proceedings are used after trial ended, without notice specifying the offending conduct or a brief right to be heard); *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974) (contemnor was tried for a series of contempts and sentenced for the equivalent of a serious offense, and was thus entitled to a jury trial); *Johnson v. Mississippi*, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971) (judgment reversed because judge was not personally aware of the contemptuous action when it occurred); *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed. 2d 240 (1965) (contemnor was entitled to a separate hearing where contempt involved refusal to answer before a grand jury and, thus, unlike contempt in an ongoing trial, swift punishment was not necessary and Rule 42(a) did not apply).

Appellant also argues that he did not have the mental capacity necessary to commit the contempt; his outbursts, in his view, simply reflect his disturbed mental condition. The district court, however, found to the contrary. In holding him competent to stand trial, the court determined that his behavior was within his control. The court might well have believed that appellant was deliberately trying to act in a bizarre way to help his insanity defense. Regardless, the court's competency finding was adequately supported, *see* pp. 654–656 *supra*, and, that being so, a determination that defendant could control his behavior was permissible. The cases that appellant cites do not involve a specific district court determination, made after a hearing, that the defendant was mentally competent.

*Cf. Panico v. United States,* 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963) (during previous criminal trial, there was conflicting testimony as to defendant's competency to stand trial, and shortly after contempt conviction, petitioner was found to be suffering from schizophrenia and was committed to a mental hospital); *United States v. Flynt,* 756 F.2d 1352 (9th Cir. 1985) (where there was substantial issue as to defendant's mental capacity to commit contempt, district court should have afforded him a hearing where he could have presented evidence of his mental capacity); *Rollerson v. United States,* 343 F.2d 269 (D.C.Cir.1964) (conflicting expert testimony created substantial issue of defendant's sanity, so as to require plenary hearing).

Appellant goes on to argue that his outbursts were simply a means of presenting his insanity defense to the jury and, as such, the district court ought to have tolerated them. We have reviewed the transcript; the outbursts were significant, and the court's finding of competence and the jury's rejection of the insanity defense find adequate support in the evidence. We are aware of no principle of law that permits a defendant to present an insanity defense by means of intentional (and controllable) outbursts in court.

We find that appellant's arguments lack legal merit. Counsel has thoroughly and conscientiously presented appellant's claims. They have been well argued. The record makes clear, however, that those arguments are insufficient to overturn the judgment of the district court. That judgment is

AFFIRMED.