STATE of Utah, Plaintiff and
Respondent,

v.

Robert Paul PACHECO, Defendant
and Appellant.

Case No. 880281–CA.

Court of Appeals of Utah.

Aug. 8, 1989.

James A. Valdez, Richard G. Uday, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Barbara Bearnson, Salt Lake City, for plaintiff and respondent.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Robert Paul Pacheco appeals from his jury conviction of burglary, a second degree felony in violation of Utah Code Ann. § 76-6-202 (1978) and theft, a class B misdemeanor in violation of Utah Code Ann. § 76-6-404 (1978). On appeal, Pacheco claims that identification procedures used violated his due process rights, that the trial court erred in admitting evidence of a prior conviction, that the trial court erroneously admitted into evidence an exhibit consisting of mug shots, and that the evidence was insufficient to support the convictions. We affirm.

The facts in this case are largely undisputed. On April 7, 1987, at about 3:30 p.m., Ray and Katherine Welch were working in their backyard. Mr. Welch took a break, went in the back door of his house and saw a man in the kitchen. The man ran out the front door and down the street, jumped into a blue and white car, and drove away. Mr. Welch later noticed that between $4 and $50 was missing from his wallet. Mr. Welch could not identify Pacheco as the man he saw run from his home that day. Mrs. Welch was outside, heard her husband yell and saw the man run to his car. A neighbor, Connie Luna,

testified that when she heard Mr. Welch yell, she came out of her house. She saw a male running from across the street to a car parked near her driveway. Realizing something was amiss, she ran across the yard to get a better look. Mrs. Luna was within about twenty feet of the man and was able to look at him full face before he entered the car and drove away. She observed that he wore a red checkered shirt and beige pants. In addition, she obtained the license plate number of the blue and white car the man drove.

Detective Paul LaMont ran a check on the license plate number Mrs. Luna provided, and determined that Pacheco was the registered owner of the car. Detective LaMont went to Pacheco's house with a search warrant and removed several shirts and pants. A few days after the incident, Detective LaMont showed Mrs. Luna a photo spread consisting of black and white driver's license photos, including Pacheco's. Mrs. Luna identified Pacheco as the man who ran from the Welchs' house, but stated she was not positive. Detective LaMont told her she had identified the suspect. About two weeks later, Detective LaMont showed Mrs. Luna a photo spread containing color photos. The folder containing the photos was marked " 'Mug' Show-Up Folder." The lower portion of each picture contained a black placard with the words "Salt Lake County Sheriff's Office" and a police identification number. Mrs. Luna identified Pacheco from the photo spread as the man she saw on the day in question.

During the trial, Mrs. Luna identified a shirt and a pair of pants seized from Pacheco's home as looking like the clothes worn by the perpetrator. She also recited, from memory, Pacheco's license plate number as the one on the car the perpetrator drove on the day in question. Mrs. Luna admitted that when she looked at the first photo spread she was not positive that she had identified the person she saw on that day. She also stated that Pacheco was the only person appearing in both photo spreads. Mrs. Luna identified Pacheco at trial and stated that she was positive that he was the man she saw on the day in question.

At trial, before Pacheco testified, the State offered the second group of photographs labeled " 'Mug' Show–Up Folder" into evidence. Pacheco's attorney objected to the photos on the basis that they appeared to be booking photos and were suggestive and highly prejudicial. The court overruled the objection and permitted the photographs to be shown to the jury.

Pacheco took the stand and testified that he did not commit the burglary and theft. He claimed that he had loaned his car to his son on that day, who returned the car about 5 p.m. Pacheco made no attempt to locate his son prior to trial and did not inquire about his son's whereabouts on that day. The jury found Pacheco guilty of burglary and theft. This appeal followed.

## I.  Identification Procedures

On appeal Pacheco claims that the identification procedures were unduly suggestive. Specifically, Pacheco claims that the police improperly affirmed Mrs. Luna's first, uncertain identification of him by telling her that she had identified the suspect. They then returned a couple of weeks later with another photospread which was labeled " 'Mug' Show–Up Folder" and in which Pacheco was the only repeated person. That identification procedure, Pacheco claims, violated his due process rights and constitutes reversible error.

■ Showing crime witnesses a number of pictures and asking if they can identify a perpetrator is an identification method which has long been used to identify those suspected of committing crimes. *State v. Perry*, 27 Utah 2d 48, 492 P.2d 1349, 1352 (1972). Resolving questions about admissibility of identification evidence hinges on assessing reliability of the evidence. *State v. Thamer*, 777 P.2d 432, (1989). In order to promote evidentiary reliability, law enforcement officials should conduct identification processes in an impartial, disinterested manner. *Id.* To determine if a pre-indictment or pre-information photo spread is so suggestive that the subsequent in-court identification violates due process, we apply a two-part test.

First, the pretrial photographic identification procedure must be so impermissibly suggestive as to "give rise to a very substantial likelihood of irreparable misidentification." *Id.* Second, if the photo array is impermissibly suggestive, "the in-court identification must be based on an untainted, independent foundation to be reliable." *Id.; see also Perry*, 492 P.2d at 1352. This standard applies not only to in-court identification, but also to determine the admissibility of testimony concerning out-of-court identifications. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). A prior identification of a suspect may offset implications of suggestiveness in a subsequent identification. *See Thamer*, 777 P.2d at 435. In reviewing whether a defendant's due process rights were violated because of the likelihood of misidentification, each case must be considered under the totality of the circumstances. *Id.* If the identification procedure gives rise to the requisite likelihood of irreparable misidentification, defendant's right to due process is violated. *Neil*, 409 U.S. at 198, 93 S.Ct. at 381 (1972).

■ In evaluating the likelihood of in-court misidentification, the factors to be considered include: the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description, the level of certainty demonstrated by the witness at the time of the confrontation, and the length of time between the crime and the confrontation. *Thamer*, at 436; *Neil*, 409 U.S. at 199, 93 S.Ct. at 382.

■ We first examine the pre-trial identification by Mrs. Luna, to determine if it was impermissibly suggestive. Several days after the crime occurred, Detective LaMont showed Mrs. Luna a group of black and white photographs. At that time Mrs. Luna stated she could not make a positive identification but she pointed out Pacheco and stated that he looked like the man. Detective LaMont then told her she had identified the suspect. A week or two later, Detective LaMont returned with a group of color photographs labeled " 'Mug'

Show–Up Folder." Mrs. Luna identified Pacheco as the man she saw on the day in question. According to Mrs. Luna's testimony, Pacheco was the only person repeated in both photo spreads. Mrs. Luna's identification became positive when she saw the second group of photographs. While there may be better ways to provide photographs than utilized in the second group of "mug-type shots," and it would be preferable if the officer had not named Pacheco as the suspect after the first incident, these acts are not egregious enough to taint Mrs. Luna's second positive identification. The second photographs simply allowed Mrs. Luna to clarify her prior identification.

■ In addition, we find that the in-court identification by Mrs. Luna was based on independent factors. Mrs. Luna positively identified Pacheco at trial, correctly recited his license plate number and identified clothes found in his home as looking like those worn by the person she saw running from the Welchs' house. Under the totality of the circumstances, we hold that the photographic identification procedure used was not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification and that the in-court identification was independently reliable. Thus, Pacheco's due process rights were not violated by the identification processes.

## II.  Motion in Limine

■ Pacheco's second claim on appeal is that the trial court erred in denying his pretrial motion to suppress evidence of a prior conviction for attempted robbery. Pacheco filed a motion in limine prior to trial. However, Pacheco did not obtain an oral or written ruling on the motion on the record. Where there is no indication in the record on appeal that the trial court reached or ruled on an issue, this court will not consider the issue on appeal. *Cunningham v. Cunningham*, 690 P.2d 549, 552 n. 2 (Utah 1984). Thus, because the record contains no indication that the trial court ruled on the motion, or how, we decline to consider the issue.

## III.  Admissibility of "Mug Shots"

■ Pacheco also claims that the court erred in allowing the photographs labeled as a " 'Mug' Show–Up Folder" to be published to the jury. The photo spread contained pictures of six individuals. The bottom portion of each photo contains a black placard with the words "Salt Lake County Sheriff's Office" and a police identification number. The photographs were admitted into evidence during the State's case in chief, prior to Pacheco's testimony and admission that he had previously been convicted of a crime. When the photographs were offered into evidence, Pacheco's attorney noted, in the presence of the jury, that the folder contained paper clips and asked the court to instruct the jury not to "mess with" the paper clips. At the end of the State's case, Pacheco's attorney objected to publishing the exhibit to the jury. He argued that the photos appeared to be booking photos, and were highly prejudicial to Pacheco in that Pacheco had not yet been placed on the stand and to testify regarding his prior record. In his opening statement, Pacheco's attorney indicated Pacheco would testify in his own defense. Movement of the paper clips reveals that each individual has two connected photos: a profile and a full face photograph.

Generally, the trial court's rulings on evidentiary matters will not be disturbed absent a showing "that the court so abused its discretion that there is a likelihood that injustice resulted." *State v. McClain*, 706 P.2d 603, 604 (Utah 1985).

Admissibility of mug shots has not yet been fully addressed by the Utah appellate courts. *See State v. McCardell*, 652 P.2d 942, 945–47 (Utah 1982); *State v. Owens*, 15 Utah 2d 123, 388 P.2d 797, 798 (1964). Several courts, however, have adopted the following three part test to determine whether or not the introduction of mug shots constitutes reversible error:

1. The Government must have a demonstrable need to introduce the photographs; and

2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and

3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

*United States v. Torres–Flores,* 827 F.2d 1031, 1038–39 (5th Cir.1987); *United States v. Fosher,* 568 F.2d 207, 214 (1st Cir.1978); *United States v. Harrington,* 490 F.2d 487, 494 (2nd Cir.1973); *State v. Kutzen,* 1 Hawaii App. 406, 620 P.2d 258 (1980).

The admission of improper photographs has been held to not constitute reversible error where defendants opened the door for admission. *United States v. Guinn,* 454 F.2d 29, 37 (5th Cir.1972) *cert. denied* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685. *See generally* Annotation, *Admissibility, and Prejudicial Effect of Admission, of "Mug Shot," "Rogues' Gallery" Photograph, or Photograph Taken in Prison, of Defendant in Criminal Trial,* 30 A.L.R.3d 908 (1970). Also, in *United States v. Davis,* 487 F.2d 112, 121 (5th Cir.1973), *cert. den.* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974), the court determined that where defendant took the stand after a mug-type photograph had been exhibited to the jury, and testified as to his prior felony conviction, the trial court's error, if any, was cured or waived by defendant's testimony. The court noted that "[r]eference to or use by a defendant of an erroneously admitted line of evidence ordinarily cures or waives error." *Id.* The *Davis* court relied on *United States v. Silvers,* 374 F.2d 828, 831–32 (7th Cir.1967) where the court held that defendant waived his objection to the admissibility of evidence regarding his prior convictions and incarcerations, by himself presenting evidence of the prior convictions to assist in his defense. In *Silvers,* the court held that references to defendant's prior convictions during the State's case was vitiated by defendant's extensive use of his prior criminal record, and thus did not constitute prejudicial error. *Id.* at 832.

We are convinced that any error in this case in admitting the photographs was waived by Pacheco, as in *Silvers,* when Pacheco testified as to his prior conviction. The photographs arguably may suggest a prior criminal record, but Pacheco, by his own testimony, resolved any doubts the jury may have had when he disclosed his earlier conviction for attempted robbery. The error, therefore, if any, was harmless and does not justify reversal. *See* Utah R.Crim.P. 30(a); *State v. Johnson,* 771 P.2d 1071, 1072–73 (Utah 1989).

## IV. Sufficiency of Evidence

■ Finally, we consider Pacheco's contention that the evidence is insufficient to support his conviction. In examining a challenge to the sufficiency of the evidence after a jury verdict,

we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*State v. Booker,* 709 P.2d 342, 345 (Utah 1985) (quoting *State v. Petree,* 659 P.2d 443, 444 (Utah 1983)). Accordingly, we have reviewed the evidence from the record and all the inferences which may be drawn from the evidence in the light most favorable to the jury's verdict.

Mr. and Mrs. Welch were in their backyard when the burglary occurred. A man matching Pacheco's description was seen on the Welchs' porch by neighbors. Mr. Welch surprised Pacheco when he entered the house, and Pacheco ran out of the house, got in his car and drove away. Mr. Welch yelled at Pacheco as he ran. A neighbor, Mrs. Luna, saw Pacheco as he fled, from only about twenty feet away, and positively identified him both before and at trial. She also observed the cloth-

ing he wore, which was similar to clothing seized from Pacheco's house, and noted the license plate number of the car Pacheco drove. The car was registered to Pacheco.

We conclude that the evidence is not so inconclusive or improbable that reasonable minds would reasonably doubt Pacheco committed the crimes of theft and burglary and therefore, that there was sufficient evidence to support the jury's conviction.

Affirmed.

BENCH and JACKSON, JJ., concur.